## Eley's Appeal.

A., by his will, made the following provisions: One-tenth of his estate he gave to the children of his son B., to be divided among them after their father's death ; during B.'s life this portion was to be held by the executors in trust for said B., to whom should be paid "the interest or income arising from the same." Another tenth the testator devised to a trustee "to pay over to C. all income arising from the said portion during C.'s life, and upon his death to convey in fee the said portion to the proper heirs of the said C." The will authorized the executors to sell and dispose of all of testator's real estate, "or to lease the coal upon or under the same," provided that the consent of owners of six-tenths of the premises was first obtained. With such consent, the executors made a perpetual lease of all the coal in certain of testator's lands, with exclusive right in the lessees to mine and carry away all the coal in said lands in consideration of certain monthly rentals. *Held*,

1. That the rents accruing from said lease were "income" within the meaning of the will, and as such should be paid absolutely to B. and C.

2. That the trust for C. was an active one; that, therefore, the rule in Shelley's case not being applicable, C. took a life estate and not a fee under the will.

3. That the power given to the executors to lease or sell the coal with the consent of six-tenths of the owners, gave the life-tenants the same rights over unopened mines that they would have had if the mines had been opened and operated in testator's lifetime.

April 12th and 13th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Luzerne county :* Of January Term 1883, No. 353.

This was an appeal by John S. Eley, Thomas Eley and Elizabeth Detweiler, devisees of James Eley, deceased, from a decree of the said court dismissing their exceptions to and confirming the report of an Auditor appointed to audit the account of John Bartholomew, surviving executor of the said James Eley, deceased.

The material facts were as follows: The testator, James Eley, died November 17th 1879, leaving surviving him five sons, four daughters, and the children of a deceased daughter. By his last will and the codicils thereto, he gave to each of his children and the said grandchildren " one-tenth part of all his property, real, personal and mixed." The property was given absolutely to all but three of the children, for whom the following especial provisions were made :

" I give and bequeath one-tenth part of all my property, real, personal and mixed, to the children of my son, John S. Eley, to be divided equally among them, share and share alike, at the death of their father, John S. Eley. The part hereby given to the children of John S. Eley I direct to be held in trust by my executors, hereinafter named, during the natural life

of the said John S. Eley, and the interest or income arising from the same to be paid to the said John S. Eley annually by my said executors during his natural life." . . . " The said tenth part of my estate, real, personal and mixed, shall be and the same is hereby directed to be held in trust by my executors, in said will named, during the natural life of my said daughter, Elizabeth Detweiler, and the interest or income arising from the said tenth part of my estate, to be paid to the said Elizabeth annually, by my said executors, during her natural life, the fee to said share to be and remain in my other heirs, subject, nevertheless, to the above stated trust."

. . " I do hereby devise and bequeath to Abram Lines, of the said Kingston township, all the said portion which, under the said last will and testament, would have gone to my said son Thomas, in trust, nevertheless to pay over to the said Thomas Eley all income arising from the said portion during the term of the natural life of the said Thomas Eley, and upon his death, that is the death of the said Thomas Eley, to convey in fee the said portion to the proper heirs of the said Thomas Eley."

At the time of his death, the testator was seised of a large tract of coal lands, for which he provided as follows :

" I hereby authorize and empower my executors hereinafter named, and the survivor of them, to sell and dispose of all or any part of my real estate, or to lease the coal upon or under the same, and to convey the same to the purchasers by good and sufficient instruments of writing, provided, however, that my said executors shall first have the written consent of owners of six-tenths of the premises before selling or leasing the same."

On October 7th 1881, the executors, with the requisite consent of the parties in interest, leased all the coal in a certain tract of land of the testator to the Delaware, Lackawanna and Western Railroad Company for an indefinite period " together with the sole and exclusive right to mine, remove, and dispose of said coal," etc. The consideration of the lease was certain monthly payments at the rate of 25 cents per ton. An installment of this rent is the fund in controversy.

On the audit, counsel for John S. Eley, Thomas Eley, and Elizabeth Detweiler claimed that the installment was " income" within the meaning of the will, and as such that three tenths thereof should be paid absolutely to them ; also that Thomas took an equitable fee and not a life-estate under the will, by virtue of the rule in Shelley's case. Counsel for the surviving executor and the minor children contended, on the contrary, that the shares of this rent belonging to the said John S., Thomas, and Elizabeth should be invested by the designated trustees in trust for them and that only the interest accruing therefrom should be paid to them during their lives.

[Eley's Appeal.]

The Auditor sustained the latter contention and awarded the sum to the trustees to be invested for their respective cestuis que trustent.

Exceptions filed to this report were dismissed by the court, in the following opinion :—

The exceptant's counsel claims the substance of the testator's language to be, that if his executors lease the coal under his land, as he has authorized them to do, then the income arising therefrom shall be paid to John S. annually during his life. This is, perhaps, the strongest light in which his case can be put, and retain any portion of the language of the will. Then it is argued the exceptant will take the income absolutely under the general rule, that " a devise of the rents, issues and profits of land is equivalent to a devise of the land itself." We have stated the rule of law as it was argued by the counsel to be, but there must be added to it this important qualification, that in order to carry the fee, a devise of the rents, issues and profits must be without limitation as to time of enjoyment or other conditions : Bentley *v.* Kauffman, 5 Norris 99 ; France's Estate, 25 Smith 220.

The same rule applies to personal estate, though with greater force : Millard's Appeal, 6 Norris 457.

In Frances' Estate the devise was to the testator's wife the " one-third of all my personal estate, and one-third part of all the income, rents, and use of my real estate," and to testator's son " all the residue and remainder of my estate, real and personal," giving his executors full power to sell and convey any and all of his real estate. The land was sold in pursuance of such power, and on the distribution of the fund it was held, reversing the court below, that the devise to the widow carried only a life estate. The reasoning of Judge MERCUR in that case is very applicable to this one.

Here there is a devise over, the intervention of a trustee, the express provision that the interest or income shall be paid by the trustees to the first taker " annually for life," followed by a power of sale in the trustees, which, in the absence of a contrary intent expressed in the will, shuts the claimant up to a life estate in the land and its proceeds in case of a sale : Sheets' Estate, 2 Smith 257.

Here, as in the cases cited, the testator blends his personal and real estate ; hence follows the expression, " interest or income"—interest on the personal estate fund and proceeds of a sale or lease, and income from the land if unconverted.

As we remember the argument of the counsel for the exceptant, his next proposition is, that admitting it was the intent of the testator that his son, John S., should have only the interest on the fund in case of a sale of the land, yet when he used the

term "lease," of the coal he meant a leasing in its ordinary sense, in which case the payments thereon must be considered as compensation for the use of the land, or income thereof, which would clearly belong to the exceptant absolutely. But a lease of the exclusive right to mine and sell all the minerals in or under land, without limitation as to quantity or time, is to be taken as a sale of the mineral in place, and consequently a sale of a portion of the land : Caldwell *v.* Fulton, 7 Casey 475 ; Harlan *v.* Lehigh Coal and Navigation Company, 11 Casey 287.

Wherever a conveyance is made of mineral, whether the conveyance be called a lease or a deed, it is, in effect, the grant of a part of the corpus of the estate, and not of a mere incorporeal right : Stoughton's Appeal, 7 Norris 198.

We are bound to presume that the testator knew the legal interpretation of the term "lease," and that in the absence of his own definition to the contrary, we must say he used it in the sense of a sale, as before shown, especially as he has prescribed no terms or conditions on which the lease should be made. It follows, then, that John S. has no more right to the income from the coal lease than he would have to the proceeds of a sale of the entire land in case one had been made. On the whole, we know of no language that could have been used to better express a gift to John S. of a mere life estate in the land, and its proceeds, whether from a sale or a lease of the coal.

As the gift is of the estate, " real, personal and mixed," we do not consider it necessary to decide whether the income from the coal lease be real or personal estate. Certain it is the devise to the executors did not work a conversion of the real estate into personalty, for the direction to sell is not absolute, and is coupled with certain contingencies : McClure's Appeal, 22 Smith 414.

The devise to the testator's daughter, Elizabeth, is found in item one to be a fee, modified into a mere life estate in the first codicil, at the conclusion of which the testator says : " The fee to said share to be and remain in my other heirs." It seems to us this devise cannot be distinguished from the former one, except that the intent to give only a life estate is, perhaps, more clearly expressed. Neither can we see that the testator intended Thomas should have any more than a life estate, the devise to him being in substantially the same language as that to John S. In the case of both Elizabeth and Thomas a fee had been given by the will, and the only purpose of the codicils seems to have been to reduce the estate to them for life, for the reasons therein given.

The exceptants thereupon took this appeal, assigning for er-

ror the court's dismissal of their exceptions to and the confirmation of the Auditor's report.

*Garrick M. Harding* and *John McGahren*, for the appellants.—1. We do not contend that John and Elizabeth took in point of duration more than a life estate in the land devised, but that from the power in the will to lease the coal, the testator gave them dominion over the corpus of the estate to the extent of the rents received therefrom. The power to lease the coal is ancillary to the enjoyment of the estate, and affords strong light in establishing the intent of the testator as to the rights of those holding for life. A devise of the rents and profits of land, or the income of land is equivalent to a devise of the land itself: 3 Washburne on R. P. 450; Pennsylvania C. for Ins. on Lives *v.* Dovey, 64 Pa. St. 261; Blanchard *v.* Brooks, 12 Pick. 63; Anderson *v.* Greble, 1 Ash. 136; Wood *v.* Griffin, 46 N. H. 234; Diament *v.* Lore, 31 N. J. Law 220; Mandlebaum *v.* McDonnell, 29 Mich. 78; Golder, County Judge, *v.* Littlejohn, 30 Wis. 351; France's Estate, 25 P. F. S. 220.

In no part of the will is the intent manifested that the income arising from a lease of the coal shall be accumulated during the term of the particular estate for the benefit of those in remainder; the income is expressly given to the life tenant. The term "income" is a proper designation of the rents to be derived from a lease of the coal, especially when, as here, the will provides for the lease. The word income means the gain which proceeds from property, labor or business (Bouvier's Law Dict.), and in its ordinary and popular meaning covers rents received from a coal lease. We have a right to presume that the testator understood and used it in that sense, and intended the first objects of his bounty to have the benefit of the rents during the existence of their estate. It is only by a strained and unnatural construction that the payment of legal interest on the installment of rent to the owners of the life estate can be held to satisfy the requirements of the will and the intent of the testator; when, as we said before, there is no provision, express or implied, that the rents shall be accumulated for those taking in remainder.

2. The testator intended the "proper heirs" of Thomas Eley to take the remainder after the particular estate for life to their father, because he has so expressed it in the codicil to his will. Under these circumstances the law gives the entire estate to Thomas Eley. The words "proper heirs" are words of limitation and not words of purchase, and where they occur in the same instrument as that creating the particular estate vest an executed estate of inheritance in the ancestor. And the rule in

Shelley's case is applied to the limitation of equitable estates where the trusts are executed. Here the trustee had no active duties to perform. It was a dry trust, executed by the statute, and the rule in Shelley's case applies : 1 Perry on Trusts 440; Bacon's Appeal, 57 Penn. 504 ; Nice's Appeal, 14 Wright 143 ; Philadelphia Trust Co.'s Appeal, 9 W. N. C. 239 ; 2 Washburne on R. property 455 (3 ed.) ; Croxall v. Shererd, 5 Wall. U. S. 281.

*Allan H. Dickson* (*T. H. B. Lewis* with him), for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, October 1st 1883.

The fund for distribution accrued from the coal lease executed by the surviving executor of James Eley, deceased, pursuant to the power contained in the last will and testament of said deceased ; and the main question is whether, under the provisions of the will hereinafter referred to, that part of the fund, in which appellants are respectively interested, is to be treated as capital or income.

In the body of his will, the testator gave absolutely to each of his nine children, except his son John, and to the children of his deceased daughter Jane, one tenth part of all his property, real, personal and mixed. He also gave a like portion of his estate to the children of his son John, to be equally divided among them at the death of their father ; and further directed that the portion thus given to his grandchildren should be held in trust by his executors during the lifetime of his son John S. Eley, " the interest or income arising from the same " to be paid to his said son, by the executors, during his natural life. The testator authorized his executors " to sell and dispose of all " his real estate, " or to lease the coal upon or under the same, and to convey the same to the purchasers by good and sufficient instruments of writing ;" provided, however, that before selling or leasing the same, the executors shall first have " the written consent of owners of six-tenths of the premises," and provided also that a specified portion of the surface shall not be sold for fifteen years after testator's death.

By a codicil to his will, testator revoked the bequest to his daughter Elizabeth Weaver, who, in the meantime, had intermarried with John Detweiler, and in lieu thereof, directed that portion of his estate which, in the body of his will, he had given to her, to be held in trust by his executors during her natural life, " the interest or income arising " therefrom, to be paid to her during her natural life. By a subsequent codicil, he also revoked the bequest to his son Thomas, and, in the same con-

nection, devised and bequeathed the same one-tenth part of his estate to Abraham Lines, in trust, nevertheless, to pay to testator's son Thomas, "all the income arising from the said portion during the natural life of said Thomas, and upon his death, to convey in fee the said portion to the proper heirs of said Thomas Eley."

At the time of his decease, the testator's estate consisted chiefly of a tract of land in the heart of the Wyoming coal field, valuable for agricultural, but vastly more so for coal mining purposes. It is very evident that the general purpose of the testator was to provide for his children by giving them an estate in the land, and in order that they might the better enjoy the same, he invested his executors and the survivor of them, with power to sell and dispose of all or any part of the real estate, "or to lease the coal upon or under the same," but not until "the owners of six-tenths of the premises" gave their written consent thereto. The requisite majority of owners deeming it advisable to lease the coal, signified their election to do so by joining with the surviving executor in the lease, from which the money for distribution was realized. Seven of the ten shares were absolute gifts, and as to them, of course, no question arose. The other three were given to the executors, in trust for the benefit of appellants, respectively, during life; and, as already stated, the question is whether the money accruing from the lease is to be considered *income* in the sense in which that word was employed by the testator, or *capital* to be invested, and only the interest thereof paid to appellants respectively.

In seeking for the testator's intention, we derive little or no assistance from that class of cases in which it has been properly held that a lease of the exclusive right to mine and remove coal or other minerals, without limitation as to quantity or time, is practically a sale of the coal or other mineral in place, and consequently a sale of a portion of the land itself. The word income means the gain which accrues from property, labor or business. In its ordinary and popular meaning, it is strictly applicable to the periodical payments, in the nature of rent, which are usually made under coal and other mineral leases, and we have no doubt it was used in that sense by the testator. In the absence of any provision, express or implied, that the payments in the nature of rent shall be accumulated for the ultimate benefit of those in remainder, it would be a strained and unnatural construction of the will to hold that he intended to give appellants only the annual interest on the installments of rent. The fact that they are tenants for life by virtue of the will of the owner, and not merely by operation of law, as in the case of tenant by the curtesy, &c., must not

be lost sight of. In the latter case, the right of the life-tenant is absolutely fixed and determined by law, while in the former, the extent of the rights appurtenant to the life estate, must be determined by the will construed in accordance with the intention of the testator. If testamentary life-tenants are authorized by the will, creating their estate, to open and work new mines or quarries, or what is the same thing, to lease the minerals for that purpose, the remaindermen are necessarily without remedy for any injury that may be thus done to their inheritance, because the will by which the life tenancy, with its incidents, was created is paramount, and they take, subject to all the rights and privileges of the life-tenant. The reason why tenants for life, as a general rule, cannot open and operate new mines, is because it would be a lasting injury to the inheritance ; but their right to operate previously opened mines, and work the same even to exhaustion, cannot be questioned : Neel *v.* Neel, 7 Harris 323 ; Irwin *v.* Covode, 12 Harris 162 ; Griffin *v.* Fellows, 32 P. F. Smith 114 ; Westmoreland Coal Co.'s Appeal, 4 Norris 344. By empowering his executors, with the written consent of six-tenths of the owners, to lease the coal for mining purposes, the testator virtually gave appellants the same rights they would have had if the mines had been opened and operated in his lifetime. The instrument, by which their equitable life interest was created, authorized the leasing of the coal, and in the absence of any provision to the contrary, they are entitled by virtue of their life interest to participate in the proceeds or income accruing from the lease. As has already been observed, there is no provision for the investment of proceeds of the lease for the benefit of those in remainder. In Daly *v.* Beckett, 24 Beavan 114, one of the questions was whether the power contained in the deed of settlement was sufficient to authorize the lease of unopened mines, and the other was whether the tenant for life was entitled to the proceeds of the mines opened under the lease, or only the interest thereon. After deciding the first point in the affirmative, and sustaining the lease, the Master of the Rolls says: " With respect to the second point, as to how the produce of the mine is to be considered, I must treat it . . . as if this was an ordinary power to lease the mines and minerals, in which case all the authorities establish this, that the produce of the mines is made part of the annual profits of the estate, and that whether in royalties, or in whatever other way it is produced, it forms part of those profits," and it was accordingly held that " the royalty reserved by the lease was in the nature of rent, and was payable to the tenant for life, and did not form corpus."

In any view that can reasonably be taken of the subject, we are satisfied the testator intended that appellants should each

receive, during their respective lives, a full share of the proceeds of the coal lease, and not merely the interest thereof.   If, under the power contained in the will, the land, including the coal, had been sold, it will not be questioned that appellants would each have been entitled to the interest on one-tenth of the consideration money during the term of their natural lives respectively : and we think it equally clear that when the requisite number of the beneficiaries under the will elected to avail themselves of the power given them to lease the coal, they are each entitled to one-tenth of the proceeds or income derived from the lease.   In their ordinary signification, and as the testator himself doubtless intended they should be understood, the expressions, " income arising from the same," " income arising from the tenth part of my estate," and " all the income arising from said portion," as applied to a lease like the one before us, mean the current proceeds of the lease, and not the interest which would accrue from the investment of the proceeds.

We are not prepared to say there was error in refusing to hold that Thomas Eley, one of the appellants, took an estate in fee under his father's will.   It is impossible to mistake the intention of the testator in revoking and changing his bequest to his son Thomas, as he did in the codicil.   Instead of giving him one share. absolutely, as he had done in the body of the will, he devised the whole to a trustee for the purpose of securing the payment of the income to Thomas during his natural life, and at his death, the conveyance of the corpus to those who may then be his legal heirs.   It is a mistake to suppose that the trust is not an active and continuing one.   The legal title is vested in the trustee, and upon him are devolved active duties, such as the care and management of the estate, collecting and paying over rents, income, &c.

Decree reversed at the costs of the appellees, and it is ordered that the record be remitted with instructions to distribute the fund in accordance with this opinion.