Lessee of SAMUEL B. FOSTER *against* ROBERT WHITEHILL.

*Marriage articles, whereby the title of lands may be affected, should be recorded in six months, under the act of 18th March 1775, in the proper county: or those titles shall be postponed to a subsequent purchase without notice express or implied.*

MR. INGERSOLL for the defendant moved for a rule to show cause why a new trial should not be had in this cause, on a verdict found for the plaintiff at the last assizes for Chester county.

The short state of the case was as follows:

Jane Montgomery, being seized of the lands in question, entered into marriage articles with the defendant Whitehill, on the 6th February 1788, whereby she granted the same to the defendant during their joint lives, and reserved to herself the right of devising them by will, notwithstanding her coverture. These articles were duly proved on the 31st March 1794, but were not recorded. She afterwards intermarried with the defendant, and on the 25th September 1793, made an appointment by will, in pursuance of her power, and devised the lands to the defendant her husband, he paying certain sums thereout, and died shortly afterwards. This will was proved on the 7th April 1796.

On the 9th June 1794, James Blellock, her heir at law, conveyed the premises to the lessor of the plaintiff, for a full and valuable consideration, without notice of the marriage articles or appointment preceding. And the question was, whether the articles should be adjudged void against the plaintiff, by reason of their not being recorded.

For the defendant it was insisted, that the act of 18th March 1775, (1 Dall. St. Laws 703,) only respected the cases of purchased and mortgaged lands, the deed and conveyances whereof were directed to be recorded within six months after their execution, but had no reference to marriage contracts. The articles might be void as a conveyance of the lands, but good as to the reserved power of appointment. It cannot be denied, but that a feme covert has a capacity to take lands either by descent or purchase, notwithstanding her coverture. In what county then, could the marriage articles be entered of record, when it is wholly uncertain, where she may become seized of real property? It is settled, that the debts of deceased persons are liens on their lands; and though the heirs of an intestate may lawfully sell and convey his real estate, yet if a will afterwards appears, such sales may be affected. Why should the plaintiff be in a better situation than those who have brought lands from heirs or devisees?

Messrs. Thomas and T. Ross were prepared on the part of the plaintiff, to answer these arguments, but were stopped by the court.

The present case is within the express words of the law—the mischief it was intended to obviate— and its true meaning. The expressions of the act are general. " All deeds and conveyances of, or concerning any lands, tenements, or hereditaments, whereby the same may be in any wise affected in law or equity, shall be recorded, " &c.

These words clearly embrace the articles before us. The mischief to be prevented, was that secret grants or agreements should not injure the rights of *bona fide* purchasers, without notice, either express or implied. Marriage articles affecting lands whereof either party is seized at the time, should be recorded in the proper counties wherein those lands lie ; and if newly acquired lands in other counties are equally to be affected thereby ; it is incumbent on the parties who would avail themselves of the contract, to have them entered of record in those new counties also. It is not fair reasoning to infer, because fair purchasers under heirs or devisees may be disturbed, that the same hardship should occur in other cases, wherein the legislature have provided adequate remedies.

Rule denied, *per totam curiam.*