# Frank's Appeal.

1. An issue is not a matter of right in the settlement of the accounts of an
assignee or trustee; it is in the sound legal discretion of the court.

2. Marriage is a valuable consideration, and in the absence of actual fraud
prevails against creditors.

3. An attorney at law acting under a power of attorney from an assignee,
and having funds of the estate in his hands, bought assigned real estate at
a sheriff's sale and sold it at an advanced price.  *Held*, that he was account-
able to the estate for the advance.

4. An assignee having funds of the estate in his hands, would be justified
in buying assigned real estate at sheriff's sale to save it from sacrifice, even
if it resulted in a loss.

5. Fisk *v.* Sarber, 6 W. & S. 18, explained.

October 21st 1868.  Before THOMPSON, C. J., READ, AGNEW
and SHARSWOOD, JJ.

[Frank's Appeal.]

Appeal from the decree of the Court of Common Pleas of *Jefferson county*, in the matter of the estate of David Frank, assigned for the benefit of his creditors. Of October and November Term 1868, No. 140.

The appeal was taken by Meyer Frank, the assignee, and M. and H. S. Frank, creditors of the assignor.

The assignment was dated February 4th 1861.

The assignee having filed his account August 14th 1863, to which exceptions were filed, G. A. Jenks, Esq., was appointed auditor to examine and report upon the exceptions, and also to report distribution.

The account, exceptions and report included very many matters not important to notice; the facts bearing upon those considered by the Supreme Court are as hereafter stated.

Part of the property belonging to the assignor at the time of the assignment was a piece of real estate known as "the Sitz property." It was sold by the sheriff, September 5th 1862, purchased by R. Arthurs, Esq., attorney for the assignee, for about $2111, and sold by him at private sale on the 26th of May 1863, at an advance of $1088.90, which he gave to the assignor. Mr. Arthurs had given bail for the assignor, and took the management of the whole estate under an irrevocable power of attorney.

It appeared further that there were debts due by the assignor amounting to $5247.61, which it was claimed had been paid at a considerable discount. Mr. Arthurs testified that some were paid at 33 per cent. on their face, some at 40 per cent., and some at 60 per cent, none of them above 60 per cent. "I think we averaged 45 or 50 per cent. I mean I bought them at that. Sometimes I had funds of the assignor in my hands, and sometimes my own; as a general thing I bought them with funds of the assignor. I had the funds of the assignor and my own all mixed up. * * * I charged the assignor only with the amount I paid out when I bought the claims at a discount."

There was also a judgment against the assignor in favor of S. McClurkin, amounting to $399.43, for which $371.36 were paid. This judgment was also secured by a mortgage on other property, worth about the amount of the judgment. Mr. Arthur testified: "The McClurkin judgment was really contracted for and bought by Meyer Frank the assignee, we claim no appropriation at this time."

Another claim was a judgment of Babeta Frank against the assignor, dated February 10th 1859, for $700 with interest. This judgment was assailed before the auditor as being without consideration.

The auditor allowed the assignee credit for $2360.42, on debts amounting to $5247.61, being at the rate of 45 per cent. He charged him with $1088.90, the advance received on the sale of the Sitz property; he reported that $993.65, being 93½ per

cent., should be paid on Babeta Frank's judgment, amounting to $1062.73.

He made alternative reports including and excluding respectively the McClurkin judgment.

As to the increase in the price of the Sitz property he reported: "That it was bought about a year and seven months after the date of assignment, on execution against the assignee; that R. Arthurs during about a year of that time was virtually assignee; that during that time he had control of about $20,000 of assets of assignee, a large amount of which could easily have been reduced to money, if they were not; that no debts were paid during that year and seven months, and if the assignee or R. Arthurs had no means to pay the judgment on which the property was sold, it must have been their own default, and he should account for the excess for which he sold it, and over what he bought for. But if he had funds of assignee in his hands, and it is a fact that he mixed the assignee funds up with his own, and if he bought with such funds, it should be for the benefit of the creditors. Besides, R. Arthurs was reimbursed his outlay, if any, either in part or in whole, out of funds of assignee, and finally settled with assignee and D. Frank, giving them the benefit of the speculation."

The report of the auditor was filed August 12th 1868, and after exceptions, was confirmed by the court September 19th 1868, "except the McClurkin judgment."

On the same day the petition of M. and H. S. Frank was presented, to wit:—

"That they were creditors of David Frank at the time the judgment-note was given on which there is a judgment entered in this court, in favor of Babeta Frank. That said note was given by said David Frank as a bounty or gift in case she would marry his son, Henry Frank, which is so testified to by her in the audit to distribute the money in the hands of Meyer Frank, the assignee of David Frank; that the said David Frank was insolvent at the time the note was given.

"Your petitioners ask the court to open this judgment, direct an issue to try the validity of said judgment, and if fraudulent against the creditors and especially against M. and H. S. Frank, that it shall not be entitled to any portion of the assets of the assignment of David Frank."

The issue was refused the same day. The errors assigned were, refusing the issue, dismissing the exceptions, and excluding the McClurkin judgment.

The foregoing statement with the opinion of the Supreme Court will give an understanding of the case.

*R. Arthurs* and *Gordon, Brothers*, for appellant.—The applica-

[Frank's Appeal.]

tion for an issue was in time, and should have been granted: Trimble's Appeal, 6 Watts 133; Reigert's Appeal, 7 W. & S. 268. The attorney had a right to buy the property at sheriff's sale: Fisk *v.* Sarber, 6 W. & S. 18; or the debts due by the assignor: Sallade's Appeal, 12 Casey 429.

*Andrews & Conard,* for appellee.—The application for an issue was too late: Dyott's Appeal, 2 W. & S. 569; Dougherty's Estate, 9 Id. 196; Dickerson's Appeal, 7 Barr 259; Overholtz's Appeal, 2 Jones 224; Act of June 16th 1836, § 86, &c., Pamph. L. 177; April 20th 1846, § 2, &c., Pamph. L. 411, Purd. 446, 447, pl. 103–106. As to the purchase of the real estate and the debts: Fisk *v.* Sarber, *supra;* Campbell *v.* McLain, 1 P. F. Smith 202. As to the McClurkin judgment: Trustees of Bank United States, 2 Pars. R. 110; Stettman's Appeal, 5 Barr 413.

The opinion of the court was delivered, January 4th 1869, by

SHARSWOOD, J.—David Frank, on the 4th February 1861, executed a deed of assignment to Meyer Frank in trust for the benefit of creditors. On August 14th 1863 the account of the assignee was filed, and on exceptions was referred to an auditor. His final report was filed August 12th 1868, and to the decree confirming that report this appeal has been taken. It appears to be a joint appeal by M. & H. S. Frank, as creditors, and Meyer Frank, the assignee, which is certainly irregular. The record is presented to us in great disorder, but we shall endeavor to extract from it, by the aid of the oral and printed argument, the matter of which these appellants respectively complain.

The 1st assignment of error is, that the court erred in refusing to award an issue to try the validity of the Babeta Frank judgment.

A petition was presented to the court below by M. & H. S. Frank, two of the appellants, setting forth that they were creditors of David Frank at the time the note was given by him, on which there is a judgment entered in favor of Babeta Frank. The petition alleged that the said note was executed and delivered by David Frank to the plaintiff, Babeta Frank, as a bounty or gift, in case she should marry his son Henry Frank, and that David Frank was insolvent at the time. They therefore ask an issue to try the validity of the judgment. There is no Act of Assembly which makes an issue a matter of right in the settlement of the accounts of assignees or trustees, as there is in the distribution of the proceeds of sheriff's sale. It is, a matter which rests in the sound legal discretion of the court. It is evident that the court exercised that discretion properly on the present occasion in refusing the prayer of the petition. Assuming all the facts alleged to be true, they did not impeach the validity of the judg-

9 P. F. SMITH—13

ment.  No actual fraud in Babeta Frank is pretended, and nothing is better settled than that marriage is a valuable consideration, and in the absence of actual fraud, prevails against creditors.  ".There is no consideration," says Lord Coke, "so much respected in law as the consideration of marriage in respect of alliance and posteritie:" Co. Litt. 9 b; 4 Kent's Com. 465; Sterry *v.* Arden, 1 Johns. Ch. Rep. 271; Magniac *v.* Thompson, Bald. 344; Barr *v.* Hill, Addison's Rep. 276.

The 2d error assigned is, that the court erred in dismissing the exceptions.  This assignment of error might be disregarded as clearly contrary to the rule of this court which provides that each error relied on must be specified particularly and by itself.  If any specification embrace more than one point, or refer to more than one bill of exceptions, or raise more than one distinct question, it shall be considered a waiver of all the errors so alleged: Reg. Gen. vi., 6 Harris 578; Bull's Appeal, 12 Harris 286.

There have come up attached to this record three distinct sets of exceptions: 1. Eleven exceptions by the assignee.  2. Five exceptions by the assignee and creditors, appellants; and 3. Seven exceptions by the assignor.  All the exceptions appear to have been dismissed.  It is a clear case for the application of the rule.  As, however, the exceptions insisted on under this head have on the argument been reduced to two, as a matter of grace and not of right, we proceed to consider them.

The auditor charged the assignee with the difference between the amount produced by the sheriff's sale of the Sitz property to R. Arthurs, and the sum for which he afterwards sold it.  The Sitz property was a part of the assigned estate, and R. Arthurs was the attorney at law and counsel of the assignee.  He bought at sheriff's sale, on September 5th 1862, for $2111, and afterwards sold the same property at private sale, May 26th 1863, for $3300.  It is strongly urged on the authority of Fisk *v.* Sarber, 6 W. & S. 18, that if the assignee could become a purchaser at a judicial sale of the assigned estate, *à fortiori* his attorney could.  But the facts of this case, as reported by the auditor, which we must assume to be true, are peculiar and distinguish it clearly from Fisk *v.* Sarber.  The auditor reports that Mr. Arthurs was virtually the assignee——that he had control of about twenty thousand dollars of assets of the assigned estate, a large amount of which could easily have been converted into money, if they were not at the time, and that if the assignee or his attorney had no means to pay the judgments on which the property was sold, it must have been their own fault.  "But if he had funds of assignee in his hands, and it is a fact that he mixed the assignee funds up with his own, and if he bought with such funds it should be for the benefit of the creditors.  Besides, R. Arthurs was reimbursed his outlay, if any, either in part or in whole, out of funds of the

assignee, and finally settled with the assignee and D. Frank, giving them the benefit of the speculation." Under these circumstances we cannot say that it was an error to charge the assignee with the amount of the sale. Though it may not have been his duty to have purchased the property on behalf of the estate, yet he would have been justified in doing so to save it from sacrifice, even if it had resulted in a loss. When having funds of the estate under his control he bought in his own name, and within little more than six months realized a considerable advance on the amount of his purchase, a case is presented in which a court of equity will decree that the profit shall be for the benefit of the *cestui que trust*. Mr. Arthurs and the assignee stand in the same position. Mr. Arthurs evidently intended no private speculation for his own gain ; he was acting in the matter for the assignee.

He said in his testimony, "At the time I settled I paid over to Meyer Frank $1173, and Davy was to have the benefit of the purchase of the Sitz property."

This fact certainly does not help the case of the appellants. If the purchase was with the funds of the estate, the advance should belong to the *cestuis que trust*, the creditors. "Where the debt," says Kennedy, J., in Fisk *v.* Sarber, "for which the property in such cases is taken in execution is just, and the property liable to the payment of it, and the trustee without funds in his hands or power to pay it, so as to relieve the property, what can he do ?"

We do not mean to question the authority of that case, or to hold that even where a trustee has funds in his hands or within his reach, it is in all cases his duty to purchase at a sheriff's sale for the estate ; but that where having funds in his hands sufficient for the purpose, especially when they are mixed with his own, and which in the exercise of a fair and honest discretion he would be justified in so applying, then if he does purchase he shall account to the *cestui que trust* for any profit made on the transaction, in the same manner as if he had bought as trustee, and confessedly with the trust funds.

Another exception to the auditor's report which has been relied on in this court is, that he credited the assignee only with an average of 45 per cent. of the debts of the estate settled by him. A considerable number of these debts were bought by Mr. Arthurs, and Sallade's Appeal, 12 Casey 429, is cited, in which it was held that a person retained as attorney for an assignee in trust for the benefit of creditors occupies no such fiduciary relation towards the assigned estate as renders him incompetent to become the purchaser of a promissory note of the assignor, and to claim the amount of it out of the funds in the hands of the assignee. But in this case, be it observed, Mr. Arthurs did not claim to receive the full amount of the debts settled or bought by him.

[Frank's Appeal.]

He admits that he used for the purpose the funds óf the estate in his hands, and adds, " I charged the assignee only with the amount of money I paid out when I₄ bought claims at a discount: when I had bought a claim at 33 cents on the dollar, I charged him only 33 cents on the dollar." No reflection, certainly, rests on the character or conduct of Mr. Arthurs throughout the whole of this transaction. But the specific complaint is, that the auditor credited the assignee with only 45 per cent. on all the claims, without any evidence. that those settled by himself were settled at a discount.

But Mr. Arthurs said in his examination, " There was some we paid 33, some at 40, and several at 60 cents on the dollar, and none of them that I paid, I paid above that. I think we averaged 45 or 50 per cent." And, again: " I mean all the claims I paid would average 40 or 50 per cent., and some they paid (that is, the assignor and assignee), would average about the same." There was surely enough in this evidence to throw upon the accountant the burden of proving what he had paid for each particular claim, which it would not be difficult for him to do, and enough to justify the auditor on his failing to do so, in assuming the general average of 45 per cent. as the rate of percentage paid by him for all.

The 3d assignment of error is, that the court erred in confirming the report of the auditor excluding the McClurkin judgment. This judgment had been purchased and was held by Meyer Frank the assignee, and was represented before the auditor by Mr. Arthur. It was secured by a mortgage on property worth, as he testified, about the amount of the debt. He said: " The McClurkin judgment is really contracted for ; bought by Meyer Frank the assignee. We claim no appropriation at this time." After this explicit disclaimer of coming on this fund, it was too late to except. It made no difference that the auditor, in reporting on the exceptions, saw fit, *ex majore cautelâ*, to report an alternative distribution, including and excluding the McClurken judgment.

Decree affirmed and appeal dismissed, at the costs of the appellant.