# Estate of Isaac Nathans, deceased. Appeal of Rebecca N. M. Nathans.

*Trusts and trustees—Removal of trustee—Act of April 9, 1868.*

Under the Act of April 9, 1868, P. L. 785, relating to the appointment and removal of trustees, one of two trustees will be removed where it appears as a fact that there exists a feeling of hostility on the part of a cestui que trust towards him, which is not the result of mere caprice, and is deep seated and destructive of mutual confidences between the parties.

Argued Jan 16, 1899. Appeal, No. 295, Jan. T., 1898, by Rebecca N. M. Nathans, from decree of O. C. Phila. Co., April T., 1897, No. 156, dismissing petition to remove trustee. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition to remove trustee.

By testator's will the residue of his estate, aggregating some $200,000, was to be held by the Pennsylvania Company for

Insurance on Lives and Granting Annuities and a cotrustee, in trust, to pay the income to the widow for life, with remainder over.  After the executor's account had been settled, and the estate had been put into the hands of the trustees, the widow, Rebecca N. M. Nathans, filed a petition setting up that owing to certain matters, occurring between her and said cotrustee, she had lost all confidence in him and feared him, that her health had been seriously affected thereby, and she was advised by her physician that her ill health would continue so long as the worriment caused by his connection with the estate should continue, and she prayed that he be removed as provided by the act of April 9, 1868.

The answer of the cotrustee denied the material allegations of the petition, and set up that he had done nothing to cause her ill health.

The case was referred to Charles Wetherill, Esq., an examiner, to take the testimony.  Upon the coming in of his report, the matter was heard by the court upon petition, answer, replication and proofs, and the petition was dismissed, apparently only because there was another trustee with whom she was satisfied, and hence she need never consult with appellee.

The following opinion of the court, ASHMAN, J., was filed:

The petitioner seeks the benefit of the act of April 9, 1868, whereby the majority of the beneficiaries for life shall have the right to elect trustees, and the court upon petition shall remove the acting trustees and appoint others so chosen.  The testator's will created several life annuities and a trust in the residue (which constitutes the bulk of the estate) for the testator's wife during life or widowhood.  The annuities were practically cut out of the estate because sums to secure them could have been set apart, so that the widow was in reality the sole life tenant and was, therefore, within the class of cestuis que trust which the act describes.

The unlimited terms of the statute were not meant to preclude the exercise of a reasonable discretion by the court.  On the one hand, they do not require in order to justify the removal of a trustee, that fraud or mismanagement shall be shown, because prior legislation provided for such delinquencies; and they do not, on the other hand, tolerate a removal which is in-

tended to gratify a mere caprice. Between these extremes of fraud and sentiment, and perhaps equally distant from both, there is a middle ground, in which an act of this character·may work beneficently. The relation of trustee and cestui que trust is necessarily intimate, and its very intimacy may breed repugnance. Honesty, which in a public official is allowed often to cover a multitude of offenses, is not the sole virtue which should be possessed by a trustee. He should not, because he accounts accurately for the trust funds, affect the language of a cowboy, or what is worse the manners of a petty railroad official. If the beneficiary fears to approach him with entire confidence for information or advice or experience, one purpose of the trust has been frustrated, and a cause for his discharge has arisen which was directly contemplated by the legislature. Indeed no self-respecting trustee would care to continue in a post nominally of confidence in which his every act is viewed with suspicion by the very party whose interest he was seeking to protect. These points were carefully considered in Stevenson's Appeal, 68 Pa. 101, Marsden's Appeal, 166 Pa. 213, and Martin's Estate, 4 Dist. Rep. 219, etc., authorities which show that, to establish harmony between trustee and cestui que trust, and yet cast no slur upon the motives of either, the courts have given a liberal construction to the act. But they have relieved only where there was a real grievance, and a doubt exists in this case whether any such grievance has been shown. The actual break between the petitioner and the respondent appears to have occurred when the respondent demanded a larger compensation than the petitioner believed he was entitled to under the will. It is fair to say that the auditing judge concurred in that opinion, but all the ground for criticism was swept away when the claim of the trustee was recognized as just by the court in banc. The evidence discloses no other adequate reason for the mental suffering of which the petitioner complains. ·

She alleges that the trustee advised her to relinquish her right in remainder to a small property in which other devisees had a life interest; but the record and other proof conclusively show that he resisted and by suit is now resisting the pretentions of the devisee. She alleges also that he has neglected properly to superintend the business left by the testator. But the trustee gave his attention to·the books and accounts and

to the collection of the debts owing in the business and he could not well do more.

The business was that of a pawnbroker in which moneys were loaned upon all conceivable chattels, from a darning needle to a diamond brooch and from a coffee pot to a coffin, and it was conducted by a trusted employee who had served the decedent for thirty years, and who knew by a varied experience not merely the values of the goods upon the shelves, but what was the least sum which a borrower could be induced to accept upon the article which he pawned, and what was the highest price which could be extracted from a purchaser when the pledge came to be sold. The respondent was not gifted with these rare attributes, and even if he had been he could have used them to advantage only by standing behind the counter of the pawnshop; and this we think would be an unreasonable requirement.

The remaining reasons assigned by the petitioner are founded upon a want of harmony between the respondent and his coexecutor, but they are certainly obsolete now. The respondent to avoid delay or annoyance consented that the widow should be paid her allowances by the checks of the cotrustee, in place of the joint checks of both trustees, and that the moneys and securities of the trust should remain in the custody of the cotrustee; and the trust company agreed that the repairs of the real estate and the collection of the rents should be intrusted to the respondent.

These considerations, it is true, do not obscure the fact that the feelings with which the life tenant regards the trustee, whether it is a prejudice or not, and whether or not it is based upon a reason which proves to be exaggerated, is deep-seated and destructive of mutual confidence between the parties. The language of her petition and of her testimony is unequivocal and unmistakable in this respect. She says: "I have lost every vestige of confidence in him; I could not believe him; I fear him; I would not go near him; I am afraid of him; I would not believe him on his oath." But notwithstanding all this, she is not entitled to the severe remedy administered by the act, if neither her interests nor those of the estate are at all affected by the attitude she may choose to assume toward the respondent. In point of fact she has dealt since 1896 exclusively with

the cotrustee, and her petition is that it may be made her sole trustee, so that even her personal convenience will not be served by the removal of the respondent. Her mental quiet cannot be seriously disturbed by the retention in the trust of a person with whom she need never come in contact, but who was nevertheless the appointee of her own husband. Her case lacks the essential elements which were present in every instance in which a trustee has been discharged under the act in question. For these reasons we must dismiss the petition.

*Error assigned* was the decree of the court dismissing the petition.

*Alex. Simpson, Jr.*, for appellant.—In discussing the question it is well to bear in mind that testator's widow is not only the primary object of his bounty, and a purchaser for value of the gifts to her, and, therefore, entitled to have an interpretation as favorable to her as the words will bear: Horton v. Cook, 10 Watts, 127.

The act of 1868 was intended to apply primarily in favor of the life tenant whose interests would be injuriously affected by the action of the trustee, and who, in protecting his or her interests, would be compelled to constantly come in contact with the trustee: Stevenson's App., 68 Pa. 101; Gaul's Est., 12 Phila. 13; Hilles's Est., 9 W. N. C. 421; Hurley's Est., 5 Pa. C. C. R. 574; Mifflin's Est., 19 Phila. 200; Marsden's Est., 3 Dist. Rep. 281; Martin's Est., 4 Dist. Rep. 219; McPherson v. Cox, 96 U. S. 404; Wilson v. Wilson, 145 Mass. 490; Lewin on Trusts, *848; Kellberg's App., 86 Pa. 129.

*Thomas McConnell, Jr.*, for appellee, cited Gaul's Est., 12 Phila. 13; Seyfert's Est., 3 W. N. C. 565; Hurley's Est., 5 Pa. C. C. R. 574; Keen's Est., 46 Legal Int. 179; Theis's Est., 26 W. N. C. 302; Kellberg's App., 86 Pa. 129.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 15, 1899:

This appeal is from the decree of the court below dismissing appellant's petition in a proceeding under the act of April 9, 1868, entitled "An act to authorize the court of common pleas

and orphans' court of the city of Philadelphia to appoint and remove trustees," which provides as follows : " When any trust now exists or is hereafter created, the cestuis que trust, or a majority of them having the life estate, shall have the right to elect or choose trustees to execute said trusts, and upon petition of the cestuis que trust or parties in interest as aforesaid, having such life estate, the court of common pleas or orphans' court in and for the city of Philadelphia, having jurisdiction, shall remove the acting trustee or trustees, and appoint other or others, as chosen or elected by said parties, who shall have all the powers to execute said trusts, upon security being approved and entered by said appointees as directed by said court appointing them : " Purd. 2036, pl. 68.

It is evident from a consideration of the purposes of the act, that the unqualified language employed therein was not intended to prohibit the exercise of a sound judicial discretion in administering its provisions.   It was accordingly held in Stevenson's Appeal, 68 Pa. 101, that the act is so far directory as to make it the duty of the court to refuse removals that are prompted by mere caprice on the part of the cestui que trust.   In Marsden's Estate, 166 Pa. 213, in the opinion of the court below, which was adopted by this Court, it is said : " The power of the court under the act of April 9, 1868, . . . . is not dependent upon the misconduct of the trustee sought to be superseded ; and it is enough to show that his retention, by reason of the existence of hostile relations between him and the cestui que trust, would materially work disadvantage, inconvenience and great discomfort to the latter."   After referring to reasons assigned by the petitioner for the existence of unpleasant relations between herself and the respondent, founded partly upon a want of harmony between him and his coexecutor, etc., and to what was done with the view of remedying the same, the learned judge of the orphans' court says : " These considerations, it is true, do not obscure the fact that the feeling with which the life tenant regards the trustee,—whether it is a prejudice or not, and whether or not it is based upon a reason which proves to be exaggerated,—is deep seated and destructive of mutual confidence between the parties."

In view of the evidence, and of the expressions contained in the appellant's petition, there cannot be any doubt as to the sub-

stantial correctness of this conclusion of fact, that her feeling of hostility towards the respondent "is deep-seated and destructive of mutual confidence between the parties." That fact being thus clearly established, it would seem that the remedy contemplated by the act above quoted should be applied, unless the personal interests, convenience and comfort of the cestui que trust should be subordinated to those of the trustee. We do not understand the act contemplates any such result as that. On the contrary, we think the controlling facts of this case bring it within the purview of the act, and require an application of the remedy therein provided. Without questioning the personal integrity or business qualifications of the respondent, it cannot be said that the antipathy of appellant towards him, which the court below has found to be "deep-seated and destructive of mutual confidence" between them, is the result of mere caprice on her part.

Without further comment, we think the decree of the court below cannot be sustained.

Decree reversed and petition reinstated; and it is further ordered that the record be remitted to the court below with instructions to enter a decree in accordance with the prayer of the petition, costs of this proceeding to be paid out of the trust funds.