# Ephrata Water Company, Appellant, v. Ephrata Borough.

*Contract—Time—Commencement of work—"Immediately "—Water company.*

Where a contract provides that the work shall commence " immediately on the signing of this agreement," the word " immediately " must be construed as such convenient time as is reasonably requisite to do the thing. The word has a relative meaning, and will imply a longer or shorter period according to the nature of the thing to be done.

Where a water company agrees to supply a borough with water, and covenants to commence the work "immediately on the signing of this agreement," the company will be deemed to have sufficiently complied with its covenant as to the commencement of the work, where the evidence shows that at the date of the contract, which was in February, the company had a reservoir having a capacity of 70,000 gallons ; that in the spring of the same year, it drove two or three tunnels into a mountain, and thereby obtained a considerable supply of water; that in the same year it purchased all the pipes that would be required, and had them in readiness to be laid ; and that in the fall of that year it commenced the construction of a reservoir which was completed in October of the following year, having a capacity of 700,000 gallons.

*Contract — Performance — Reciprocal duties—Water companies — Boroughs.*

Where a contract imposes reciprocal duties on the parties and the ability of one to perform depends on performance by the other, it would seem plain that the latter's failure to perform within the time fixed for perform-

ance by the former would be a waiver of the time limitation.  A party who is himself in default has no right to insist on rescission while in default, and where there has been indulgence on both sides, one party cannot suddenly rescind without notice to the other.  After waiver, or where the agreement was originally indefinite, time does not become of the essence until notice be given by one of the parties, insisting on compliance within a reasonable time.

Where a contract between a water company and a borough provided that the company should at the expiration of one year from the date of the agreement have its water pipes laid, and the fire plugs supplied with water, failure of performance at the time specified is excusable where it appears that fire plugs were to be located in such places as the authorities of the borough should designate within three months from the date of the agreement, and that it was not until a year and one half afterwards such designation was made, and that thereafter the company promptly laid its pipes.

*Contract—Water company—Borough—Rescission.*

Where a water company has entered into a contract with a borough to supply the latter with water, the contract cannot be deemed to have been rescinded by the company from the bare fact that it offered to enter into a new contract upon the same terms as the old except as to the price, which offer was not accepted.

*Trial—Practice, C. P.—Evidence—Rulings on evidence.*

Where an offer of evidence is made for several purposes, some of which are proper and others improper, it is not reversible error to overrule the offer as made.

Argued Nov. 14, 1901.   Appeal, No. 231, Oct. T., 1901, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1895, No. 4, on verdict for defendant in case of Ephrata Water Company v. Ephrata Water Company.   Before Rice, P. J., Beaver, Orlady, W. W. Porter and W. D. Porter, JJ. Reversed.

Assumpsit for water rent.   Before Landis, J.

At the trial it appeared that on February 6, 1893, the Ephrata Water Company entered into a contract in writing with the borough of Ephrata to supply the latter with water.   The material portions of this agreement are quoted in the opinion of the Superior Court.

The suit was brought for water rent for thirty five plugs for six months at the rate of $25.00 each per year, amounting to the sum of $375.   It was claimed that the rent ran from November 1, 1894, when the water was turned into the plugs, until May 1, 1895.

Other facts appear by the opinion of the Superior Court.

When Samuel L. Sharp was on the stand, the following offer was made :

Plaintiff offers to prove, by this witness and others, that after these plugs were placed in the borough of Ephrata several fires occurred in the borough which were extinguished by the use of these fire plugs, for the purpose of showing that the Ephrata Water Company carried out its contract with the borough, and for the further purpose of showing the ratificat:on of the contract and the acquiescence in it on the part of the borough council.

Objected to by the defendant. Offer disallowed as made. Plaintiff excepts. Bill of exceptions signed, sealed and filed for the plaintiff. [7]

Plaintiff's points among others were as follows :

2. The selection of hydrants and choosing locations for the same by the borough council, and using the water in the borough's public building and for flushing the streets, was a ratification of said contract, and the borough is liable to pay for the use of said hydrants according to the terms of said contract. *Answer :* This point is refused. [2]

4. The proposition and agreement of March 5, 1894, amounted simply to an offer to the borough by the water company to change some of the terms of the original contract of February 6, 1893, and, not having been accepted by the borough, did not constitute an abandonment of the original contract of February 6, 1893, which, therefore, remains unaltered and in full force. *Answer :* The time for the completion of the original contracts having expired, the submission of a new proposition was a recognition of the failure to comply with the original contract and an abandonment of all claims thereunder. [3]

5. Under all the evidence in the case, the verdict must be for the plaintiff for the amount claimed. *Answer :* This point is refused. [4]

Defendant's points among others were as follows:

1. Under the law and all the evidence in this case, the verdict must be for defendant. *Answer :* This point is affirmed. [5]

2. The plaintiff having sued on the express contract of February 6, 1893, and it now being shown by uncontradicted evidence and by the admissions of the plaintiff that its work was

not completed under the contract within the period of a year prescribed by the contract, and that, after that period, the borough was offered better terms by other parties ; that plaintiff knew this and offered the modified agreement of March 5, 1894, with better and improved terms, the plaintiff company, by its own acts, abandoned its prior contract, and, under the pleadings, cannot recover in this action, and the verdict must be for defendant. *Answer :* This point is affirmed. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (2 – 6) above instructions, quoting them. (7) Rulings on evidence, quoting the bill of exceptions.

*J. W. Appel,* of *Appel & Appel,* and *D. McMullen,* for appellant.—In order to constitute a novation to a contract the original agreement of which novation is sought must be absolutely extinguished and the new agreement substituted for it.

A proposal by one party to the other to change the manner of performance, unaccepted by the other party, does not amount to a change in the terms of the contract, but leaves it unaltered : Collins v. Baumgardner, 52 Pa. 464 ; Harvey v. Morey, 22 Colorado, 412 ; 45 Pac. Repr. 383 ; Banemur v. Levenson, 50 N. E. Repr. 10 ; Zehender's Est., 12 W. N. C. 112.

The fact that the original agreement in this case was not fully carried out within the year from the time it was made can have no bearing upon the question of abandonment, because after the expiration of the year, and after the veto of the ordinance of March 5, 1894, the borough council selected the pattern of hydrants and designated the places for their location.

In equity the time of performance ought to be regarded as immaterial where there has been no material change in the circumstances affecting the contract, and where the party complaining has not seriously urged its performance : Haverstick v. Erie Gas Co., 29 Pa. 254 ; Shaw v. Lewistown, etc., Turnpike Co., 2 P. & W. 454 ; Oliver v. Brophy, 18 W. N. C. 427 ; Merrill v. Trimmer, 2 Pa. C. C. Rep. 49 ; Lauman v. Young, 31 Pa. 306 ; Western Penna. R. R. Co.'s App., 104 Pa. 399 ; Anspach v. Heft, 57 Pa. 326.

Where a contract imposes reciprocal duties on the parties

and the ability of one to perform depends on performance by the other, the former is held excused by the nonperformance by the other: Day v. Jeffords, 29 S. E. Repr. (Ga.) 591.

It is submitted as matter of law that there was no evidence of abandonment at all in the case; but if there was any, then it should have gone to the jury as a matter for them to pass upon: Richardson v. Moyer, 155 Pa. 174; Waters v. Wolf, 2 Pa. Superior Ct. 204; Youst v. Martin, 3 S. & R. 423; Hobbs v. Columbia Falls Brick Co., 157 Mass. 109; 31 N. E. Repr. 756; Aye v. Philadelphia Co., 193 Pa. 452.

*John E. Malone*, with him *W. U. Hensel*, for appellee.

OPINION BY RICE, P. J., April 21, 1902:

The defendant's second point suggests the questions to be considered on the appeal. It does not suggest that the contract of February 6, 1893, was invalid ; nor is the argument of the defendant's counsel in support of the affirmance of the point, and the consequent binding instructions that the plaintiff could not recover, based on that ground. The two grounds of defense we are called upon to consider are : first, failure of performance on the part of the plaintiff ; second, rescission or abandonment of the contract.

The provisions of the contract pertinent to the first question are as follows :

" That the party of the first part, viz: the Ephrata Water Company, shall and will commence the necessary arrangements for supplying the party of the second part, viz : the borough of Ephrata, with water immediately on the signing of this agreement, and that, at the expiration of one year from the date of this agreement, all main water pipes in the limits of said borough, which are to supply the fire plugs or hydrants hereinafter referred to, shall be properly laid in place, and the said fire plugs shall be supplied with water at the same time."

" Fourth. The party of the first part will furnish to the party of the second part thirty first-class, double discharge, frost-proof fire plugs or hydrants to be located at such places as the proper authority of said borough may direct, which places shall be designated by the party of the second part within three months after the date of this agreement."

The first branch of the plaintiff's undertaking was to commence the necessary arrangements for supplying the borough with water, immediately on the signing of the agreement. "The word ' immediately,' although in strictness it excludes all mean times, yet to make good the deeds and intents of parties, it shall be construed such convenient time as is reasonably requisite to do the thing : " Pybus v. Mitford, 2 Lev. 77. It has been construed to be a stronger term than the expression " within a reasonable time," and to imply " prompt, vigorous action without delay," but in the same case in which the latter opinion was expressed, it was also held that whether there has been such action is a question of fact, having regard to the circumstances of the particular case : Queen v. Justices of Berkshire, L. R. 4 Q. B. Div. 469; 1 Bouv. Law Dict. (Rawle's ed.) 983. We suppose there may be cases, where, the facts being undisputed and the inferences from them free from doubt, it would be the duty of the court to determine the question. But whether it be a question of law for the court or a question of fact for the jury, all the authorities agree, that it is impossible to lay down any hard and fast rule as to what is the meaning of the word in all cases. As has been said of the word " forthwith," with which it is synonymous, it has a relative meaning, and will imply a longer or shorter period according to the nature of the thing to be done. The plaintiff's witnesses testified : that at the date of the contract, the company had a reservoir having a capacity of 70,000 gallons ; that in the spring of the same year, it drove two or three tunnels into the mountain and thereby obtained a considerable supply of water ; that in the same year it purchased all the pipes that would be required and had them in readiness to be laid ; and that in the fall of that year it commenced the construction of a reservoir, which was completed in October, 1894, having a capacity of 700,000 gallons. The court would have been warranted in charging the jury, that if the foregoing facts were established to their satisfaction, the plaintiff had not forfeited its rights under the contract by failure to commence the work within the time contemplated by the parties.

The second branch of the plaintiff's undertaking was, that, at the expiration of one year from the date of the agreement, all main water pipes which were to supply the fire plugs or

hydrants "hereinafter referred to" should be properly laid in place and the fire plugs supplied with water.   It is an admitted fact that the pipes were not laid within a year from the date of the contract; but it is to be borne in mind that the pipes were to be laid to supply fire plugs, which were to be of such pattern, and were to be located at such places, as the proper authorities of the borough should designate, and that, although by the terms of the contract such designation was to be made within three months from its date, it was not made until July or August, 1894.   Promptly thereafter, according to the testimony, the plaintiff laid the seven or eight miles of pipe it had previously purchased, connected them with the fire plugs, and, having completed the reservoir, turned on the water early in October, 1894.

Where a contract imposes reciprocal duties on the parties and the ability of one to perform depends on performance by the other, it would seem plain that the latter's failure to perform within the time fixed for performance by the former would be a waiver of the time limitation.   A party who is himself in default has no right to insist on rescission while in default, and where there has been indulgence on both sides, one party cannot suddenly rescind without notice to the other: Hatton v. Johnson, 83 Pa. 219; Irvin v. Bleakley, 67 Pa. 24; Forsyth v. North American Oil Co., 53 Pa. 168; Eberz v. Heisler, 12 Pa. Superior Ct. 388.   After waiver, or where the agreement was originally indefinite, time does not become of the essence until notice be given by one of the parties, insisting on compliance within a reasonable time.   Applying these principles to the case in hand we conclude, that, if without fault on the part of the plaintiff, there was not complete performance within the year, but there was part performance involving the expenditure of money, the defendant could not take advantage of its own default and arbitrarily rescind the contract at the end of the year.

But it is argued that the plaintiff afterwards treated the contract as at an end, and, therefore, its binding force could not be restored except in the mode and with the formalities prescribed by law for the enactment of an ordinance.   We cannot better state the proposition than by quoting from the charge of the court.   The court said: "But, when the year terminated, it

seems to have been considered on all hands that the provisions and stipulations of the agreement had not been carried into effect. The water company, recognizing this situation, on March 5, 1894 (a proposition from another company having been before councils offering better terms), submitted another proposition signed by its president and secretary to the borough council, whereby it agreed that it would lay the main water pipes in the limits of the borough and supply the fire plugs or hydrants with water within one year, and execute a bond in the sum of $5,000 for the compliance of that agreement, the terms being substantially, except as to price, the same as the first agreement. . . . This proposition was embodied into an ordinance and was passed by the borough council. It failed, however, to be carried out, by reason of the veto of the burgess and the inability of councils to pass the same over that veto. It was then that the water company fell back on the old agreement, and is now here attempting to recover the original price. . . . . We think that, they having treated that agreement as dead, they cannot in this way, instill it with life." Where a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights or terms to the injury of the one misled by his conduct. But it does not appear in this case that the defendant was misled into any action in consequence of the proposition submitted by the plaintiff. There is only the bare fact of an offer to enter into a new contract upon the same terms as the old, except as to the price, which was not accepted. The motive of the plaintiff may have been to avoid the litigation that would probably ensue if the offer of the rival company was accepted. This supposition is quite as probable as any that can be made. At any rate its offer did not create an estoppel nor operate as a rescission of the original contract or as an abandonment of all claims thereunder. The utmost that can be claimed for it is that it was in effect an offer to rescind the old contract and relinquish all rights under it, if the borough would enter into the proposed new contract. Possibly it would have been evidence upon the question whether there was a mutual rescission, but standing alone it would not establish that fact. We conclude, therefore, that there was error in the instructions above quoted, in the

answers to the plaintiff's fourth point and in the affirmance of the defendant's points.

The plaintiff's first, second, fourth and fifth points practically asked for binding instructions. As its case depended to some extent upon the testimony of witnesses and conclusions of fact to be drawn therefrom, these points could not have been unqualifiedly affirmed ; therefore, the first, second and fourth assignments are overruled.

We cannot say that there was error in any of the rulings upon evidence, excepting, possibly, that which is the subject of the seventh assignment. As bearing upon the question whether the plaintiff furnished a supply of water for the purposes contemplated by the contract, the evidence embraced in the offer was admissible. But the court committed no error in holding, as we construe its ruling to be, that it was not admissible for the other purposes stated in the offer.

Judgment reversed and venire facias de novo awarded.