## Tiffany's Estate.

*Husband and wife—Antenuptial agreement — Construction — Trusts and trustees—Novation.*

1. An antenuptial agreement, regardless of form or verbiage, will be interpreted, so as to effect the intention of the parties thereto, more liberally than in case of deeds.

2. Where an antenuptial agreement provides that the income from the amount settled upon the wife shall be a charge or debt on the husband's estate, the word "income" will be construed as meaning "legal interest" on the amount settled on the wife.

3. Where an antenuptial settlement provides that the income from the amount settled shall be paid after the husband's death to the wife for life, without specifying remaindermen, and without providing a trustee, the wife has a right after her husband's death to proceed directly against the estate without having a trustee appointed.

4. If, in such case, the wife presents a petition for the appointment of a trustee, and the trustee appointed in pursuance of the petition invests the fund in United States Government securities paying less than 6 per cent., he cannot thereafter, at the instance of the wife, be surcharged with the difference which he actually received from the interest on the government bonds and the amount which he would have realized by investments in securities returning a greater rate of interest.

5. While, in such case, the trustee cannot be surcharged, the changed conditions caused by the appointment of a trustee will not defeat the widow's right to claim a return of the legal rate of interest for income from her deceased husband's estate; but this she must enforce herself and not through the trustee.

6. The substitution of a trustee in such case will not effect a novation of the securities.

7. The burden is upon one who alleges a novation to establish it by proper proof; and in the absence of an agreement that the original obligation should be extinguished and a new one substituted and the original debtor relieved, the mere acceptance of the obligation of a third person will be considered as additional security.

*Trusts and trustees—Removal—Unfriendly relations—Act of June 7, 1917.*

8. The removal of a trustee is largely within the discretion of the court, but a substantial reason for such removal must be shown.

9. A trustee will be removed under the Act of June 7, 1917, P. L. 447, where it appears that he was a stepson of the *cestui que trust* and one of the remaindermen after the expiration of her life estate, and that the relations between the parties were so inimical as to preclude consultation and personal co-operation between them.

Citation to remove and surcharge trustee. O. C. Susquehanna Co., April T., 1918, No. 33.

*Van Scoten & Little* and *Frederick E. Scott*, for petitioner.

*D. T. Brewster* and *P. T. Lonergan*, for respondent.

SMITH, P. J., April 12, 1924.—These proceedings were initiated upon the petition of Mollie G. Tiffany, widow of above decedent, averring in substance such a degree of mismanagement of the funds of the trust estate and failure to keep same invested in character of securities producing available interest and increase to the petitioner, *cestui que trust*, also unfriendly relations between the trustee and the *cestui que trust* of such a character as precluded consultation and personal co-operation between them as to prejudice the contentment and peace of mind of the petitioner and jeopardize the successful administration of the trust estate; and all justifying the order prayed for, viz.: (1) The removal of Dean S. Tiffany, the trustee; and (2) surcharging said trustee with income which it is charged he should have received; and (3) account for other income received. To which an answer was filed.

Tiffany's Estate.

From the evidence produced at the hearing we find the following

*Facts.*

1. That on Sept. 17, 1909, the decedent, John H. Tiffany, and one Mollie Gray, then unmarried, entered into an antenuptial agreement in contemplation of marriage, the material portions of which we later copy in this opinion.

2. That following the execution of the foregoing agreement, the parties thereto were married and lived together as husband and wife until the death of Mr. Tiffany.

3. That by the report of the auditor distributing the estate of decedent, No. 3, April Term, 1913, Orphans' Court, this county, finally confirmed Sept. 4, 1917, there was awarded, based upon the antenuptial agreement in the following language:

"Under the terms of the marriage settlement between J. H. Tiffany and Mollie G. Tiffany, the said Mollie Gray Tiffany was given the income from the sum of three thousand dollars during her lifetime, or so long as she remains the widow of J. H. Tiffany; and your auditor recommends that the sum of three thousand dollars be impounded and a trustee appointed by the court to keep that amount invested for the use of the said Mollie G. Tiffany, who is still the widow of the said J. H. Tiffany, and at the death or remarriage of said widow, to pay the same over in equal shares to Dean S. Tiffany and John B. Tiffany, $3000.00."

4. That on Dec. 27, 1917, upon petition of the said Mollie G. Tiffany, presented by her attorney, J. M. Kelly, Esq., the court appointed Dean S. Tiffany trustee of the $3000 so distributed, to be administered under the terms of such antenuptial agreement, incorporating in the decree of appointment a direction to the trustee "To invest, reinvest and keep invested in good real estate securities during the life or widowhood of Mollie G. Tiffany, and to pay to said Mollie G. Tiffany annually the interest upon such sum during her life or as long as she remains the widow of John H. Tiffany."

5. That in such petition for appointment of the trustee the said Mollie G. Tiffany did not designate any person or party to be appointed, and it does not appear by any evidence produced for what reason or by whom the designation of Dean S. Tiffany as such was made. We further find, in this connection, from the evidence of Mollie G. Tiffany, on recall as a witness, that she "did not have any knowledge that his appointment was to be asked for, was not consulted, and would have fought it bitterly," giving as a reason that "he is my worst enemy;" neither did she have any notice of the second petition for amended decree found as a further fact as sixth below until after decree signed by the court.

6. That on April 25, 1918, the Orphans' Court, upon petition of Dean S. Tiffany, the trustee, modified or amended the former decree of appointment, being the fourth above finding of fact, by changing the character of instruments therein directed and removing the restriction therein; by directing the trustee to "invest, reinvest and keep invested, so far as practical and lawful, in securities authorized by law."

7. That the antenuptial agreement is silent as to the beneficiaries of the said $3000 trust fund or what remains after the death or remarriage of the said Mollie G. Tiffany; but by the aid of the auditor's report mentioned they would appear to be the two sons of the testator decedent, John H. Tiffany, viz., the present trustee, Dean S. Tiffany, and John B. Tiffany; and it does not appear that the latter ever had any notice of, joined in or consented to the

decrees of appointment of the present trustee or subsequently expressly ratified the same.

8. That the respondent trustee filed bond approved by the court, entered upon his duties as such, received from himself, as administrator of this John H. Tiffany estate, into his possession the trust fund, and continued to act as such; that the trust fund so coming into his possession as trustee consisted in part of $2400 in two mortgages so invested by the testator in his lifetime, of $1200 each, upon improved real estate in Dunmore, Pa., which were paid and satisfied in September, 1921. (See fourth paragraph of petition and answer thereto.) That such investments bore 6 per cent. annual interest (see fifth paragraph of respondent's answer), which was regularly paid to the *cestui que trust* (sixth paragraph of petition and answer, also fifth paragraph of petition not denied); that since the payment of said mortgages, the trustee has practically for the entire period kept the entire trust fund invested in U. S. Government Liberty Bonds of different issues, with varying income of 4 per cent., 4¼ per cent. and 4¾ per cent.; received and paid over the net income to Mrs. Tiffany, without default.

9. That the Scranton Trust Company, located at Scranton, Pa., is a corporation authorized to receive, invest, reinvest trust funds of the character of those in question at bar, and account for the income thereof, and, by the evidence of W. A. Titworth, Esq., a director thereof and a member of this bar, have been able to pay, and probably could pay, a net income on such funds of 5 per cent. per annum, paying bank interest at 4 per cent. when not invested in securities.

10. That Mrs. Tiffany never made any objections to the amount of payments of income to her until the last one of April 30, 1921, which, when cashed, she endorsed "to apply on year's income of $3000.00."

It will be observed that the original petition of the *cestui que trust* for appointment of the present trustee asked that the order for investment "be in good and safe securities, paying the interest thereon at *six per cent.*, less the lawful tax, if any, annually to her," and the decree made by my predecessor, Hon. H. A. Denny, so directed. Upon a subsequent petition to us, praying for a modification of this decree, we directed, April 25, 1918, such investments to be made "in securities authorized by law;" this because of the statutory authority to fiduciaries as to the character of investments by the Act of June 7, 1917, § 41, cl. 1, P. L. 447, which includes "public debt of the United States," such as those made by the present trustee of which complaint is now being made. We here note that the terms of the antenuptial agreement at bar, to which we will now refer, were not called then to our attention, and only until this controversy.

This agreement for the source of the income, as from the *"estate"* of the said J. H. Tiffany, constituted no *trustees*, and makes no provision for any, which distinguishes it from the usual category of trusts and investments.

The courts are zealous to support a "marriage settlement" such as the one at bar, of which the exhaustive opinion of Livingstone, J., in Wind *v.* Haas, 8 Pa. C. C. Reps. 645, because of its extensive citation of sustaining appellate decisions, is especially informing, and to which we refer for careful reading, in which we note (bottom page 651) that there, as here, no provision was made for the appointment of any trustee to effect the consummation of the antenuptial contract being interpreted, applied and enforced.

The same opinion supports an equitable construction of such agreements, which, regardless of form or verbiage, will be interpreted so as to effect the intention of the parties more liberally than in case of deeds; such agreements

are supported if orally made (Krug's Estate, 196 Pa. 484), and should be recorded to prevail against subsequent purchasers without notice: Foster v. Whitehill, 2 Yeates, 259. The wife's claim thereon is valid against her husband's creditors, and was so allowed after the latter's death, in Frank's Appeal, 59 Pa. 190, and Jones's Appeal, 62 Pa. 324. In the latter case, although the husband's estate was insolvent, of which fact the wife was ignorant at the time of its execution.

In a later clause of the agreement at bar, as above quoted, the decedent expressly declares that the said *"income* and such part or all of said one thousand dollars . . . she may need in case of sickness, as above provided, shall constitute a *charge or debt of his estate* and may be collected as other debts are by law collected."

After taking evidence in support of the present rule and motion and adjournment following, we, upon examination preparatory to decision, were impressed by the provisions of the articles we have just quoted with the necessity of further information as to the status of the husband's estate, parties interested therein as heirs, devisees or legatees, and from further evidence directed to these fatures we find the following additional facts:

(a) That by the will of J. H. Tiffany there vested in his son, Dean S. Tiffany (present trustee), one-third; in a son, John B. Tiffany, one-third; and in trust the remaining one-third for the benefit of a daughter, Bessie L. Tiffany, of which latter the two sons named herein became the joint equal owners; the personal property has been distributed, of which, after payment of debts, they each received $16.09, and $3000 for the benefit of the present *cestui que trust* was impounded, followed by the appointment of the present trustee to administer the same.

(b) That there still remains a farm of 194 acres in Dimock Township, this county, of which the title still exists in the two sons as devisees under their father's will. This farm is, and for the past year has been, unoccupied, and is assessed at $4100 for taxable purposes, and of which no other valuation is testified to or of any encumbrances against the same; no rental value given.

We will first discuss the status of this trust as if no impounding of the *corpus* or appointment of trustee had been made; this particularly applying to the $1000 for Mrs. Tiffany's support and the *"income"* of the entire $3000 payable annually to her. Of these it was clearly the intention of Mr. Tiffany that they were to be actually a *"charge"* upon and collectible, in default of payment, by action to enforce their payment against *his estate,* including the 194-acre farm mentioned, for which we have already cited authorities above, the *cestui que trust* becoming a *"creditor"* of such "estate," to relieve against which the devisees would be required to pay the same as accrued. By what rule would this income be measured, as equivalent to legal *"interest"* upon the *corpus,* or by such income as receivable from statutory investments authorized of fiduciaries, although less than legal interest?

That the terms "interest" and "income" are frequently interpreted as synonyms and interchangeable terms is sufficiently sustained in Pennsylvania by the courts in Sims's Appeal, 44 Pa. 345; Eley's Appeal, 103 Pa. 300. We are of the opinion, and so hold, that the decedent intended by such language and use of the term "income" that the one about to become his wife should, after his death, receive annually a sum equal to legal interest, *i. e.,* 6 per cent. on the $3000, less tax, of course, but with never a thought, or at least none expressed or even implied from the instrument itself, that a trustee would be appointed or necessary. There is no language authorizing the receipt of the *corpus,* or any part of it, by any person for investment or directing its invest-

ment, assuming, no doubt, the residuary beneficiaries would see to its payment without the intervention of a trustee and its attendant expense, and clearly he did not anticipate or calculate upon a reduction of annual income to his wife, based upon $3000 of principal, below the legal rate of interest; such solicitude for and purpose to provide for her welfare must be presumed.

Do the changed conditions of impounding the *corpus* and the appointment of a trustee at the petition of the *cestui que trust*, Mrs. Tiffany, alter the measure of income and respective rights and liabilities of the parties concerned? Is she by said proceedings estopped from the benefit of a *charge* against her husband's estate and a claim to a return of legal rate of interest as her income, as is now claimed by the trustee? Or does the impounding of the *corpus* of $3000 in the hands of the trustee for investment and paying over to her the net income afford her but cumulative security rather than a novation?

As there is shown no express agreement that such impounding and trusteeship should effect a novation of securities, its existence must be sought for on the principle of estoppel: Ephrata Water Co. *v.* Ephrata Borough, 20 Pa. Superior Ct. 149, 24 Pa. Superior Ct. 353. The essentials of a novation are the *extinction* of the original security and a *substitution* of a new, supported by a sufficient consideration and the consent of the parties: Wright *v.* Hanna, 210 Pa. 340, followed in Curtin *v.* Peoples Natural Gas Co., 233 Pa. 397. "Novation is not to be presumed; it must be established by evidence:" Per Doty, J., in McCartney *v.* Kipp, 171 Pa. 644 (648), in which the opinion of the court below was adopted and affirmed by the Supreme Court. "The burden is upon one who alleges a novation to establish it by proper proof; and in the absence of an *agreement* that the original obligation should be extinguished and a new one substituted and the original debtor relieved, the mere acceptance of the obligation of a third person will be considered as additional security:" Per Frazer, J., in Jones *v.* Casualty Co., 255 Pa. 566 (573).

We do not lose sight of the fact that the antenuptial agreement states, as to the provision for the petitioner after his death, he "will so provide that upon his death," etc. This is an agreement not presently executed, but to be performed at some future date; possibly we may assume by will or other record lien upon *"his estate,"* which appears not to have been consummated by his own act; neither can the impounding of $3000 and creation of the trust be considered the execution of such antenuptial covenant made by the decedent, for no "charge" on his *"estate"* is thus created; but by a later clause in his agreement, as we have already noted, the *corpus* and income is *eo instanti*, at the execution of the contract, constituted such charge, without more, and it is unfortunate it was not so acknowledged as to be recorded.

So far as the facts we have considered as to novation are concerned, we are of opinion novation was not effected, but presumptively an additional security was created, which still exists, for Mrs. Tiffany's benefit, unless her subsequent conduct, by receipt of the income of the express trust fund and absence of questioning the amount, shall require us to hold that such acquiescence and laches works an estoppel to her rights by virtue of the *charge* created by the antenuptial agreement.

True, in the present proceeding, Mrs. Tiffany is not directly attempting to enforce such charge; indirectly so, however, for, as to the investments of the trust fund impounded, we hold they were strictly within the trustee's right to make under the statute relating to investments by fiduciaries, from which we have already quoted; but if the charge remains under the agreement, the question arises whether he is not bound to collect the deficiency of income from the J. H. Tiffany estate.

We are safe in negativing this question, for the administration of the trust by him affords no duty or right by him to enforce the terms of the antenuptial agreement itself. It did not pass into his hands or under his control as part of the trust. By such agreement Mrs. Tiffany herself is given rights of action against the estate, which still subsist in her alone, unless by her laches and by her acquiescence she has waived such remedy, which is not for us to decide here, as it is only proper for consideration and determination in a proceeding to enforce such remedy, should she resort thereto.

We conclude there is insufficient evidence to support any surcharge of the trustee in these proceedings. But whether he should be removed is another matter. The petition for removal is based upon the unfriendly relations between the *cestui que trust* and her trustee, hampering personal intercourse or co-operation and that mutual confidence which should prevail in such matters.

Authority for such removal is now provided by section 53 of the Fiduciaries Act of June 7, 1917, P. L. 447, paragraph 9 of which (page 19) must be resorted to for the application here, which provides for such removal upon petition of those, or a majority of such, having life interest, "upon any substantial ground not hereinbefore (by the act) enumerated," of such is that invoked at bar, viz., inimical relations, founded upon the following cumulative facts:

(*a*) The trustee is a stepson of the *cestui que trust*.

(*b*) What appears to have been the absence of cordiality between such, evidenced more by failure to communicate and consult than actual expressions or conduct.

(*c*) The statements in the evidence of the *cestui que trust* that her relations with the trustee had been "very unfriendly." Again, "we have not been on friendly terms at all; our relations have been very inharmonious, I might say, from the date I married Mr. Tiffany." And the testimony of the trustee himself on this point is rather equivocal (page 7, evidence) and somewhat in avoidance, but sufficient for inference affirming the fact.

(*d*) That the present trustee is one of the beneficiaries of the estate upon which the benefits to his *cestui que trust* are by the antenuptial agreement made a charge, would but add to mutual embarrassments in the future execution of the trust, should the *cestui que trust* hereafter elect to bring action to recover the deficiency of "income" actually below net 6 per cent. actually received from the trustee.

We think the facts thus stated justify us in entering a decree of removal of the trustee under the authority of the principle epitomized from the opinion in Price's Estate, 209 Pa. 210 (3rd syllabus). "To justify removal depends so largely on the circumstances as shown in the evidence that much room must be left for the discretion of the court:" Myers's Estate, 205 Pa. 413 (415). While the courts have no power to remove upon whim or caprice of the *cestui que trust*, and a substantial reason for such action must appear (Neafie's Estate, 199 Pa. 307), we believe our conclusion is founded upon sufficient substantial reasons. We simply cite further supporting authorities: Nathans's Estate, 191 Pa. 404; Hill *v.* Whiteside, 237 Pa. 340; Gilbert *v.* Johnson, 49 Pa. Superior Ct. 191; Lafferty's Estate, 198 Pa. 433; Bryson *v.* Wood, 187 Pa. 366, and Marsdon's Estate, 166 Pa. 213.

Therefore, while we are of the individual opinion that the present trustee could very well have invested the trust fund so as to receive a greater income than was actually realized, and which it was clearly the intention of Mr. Tiffany to afford her, the trustee has made investments within the strict letter

of the statute, and for that reason we cannot surcharge him. But in the exercise of our equity powers, constituent features of the Orphans' Court, we direct Dean S. Tiffany should pay the costs of these proceedings. We enter the following

### Decree.

And now, April 12, 1924, we decline to surcharge the trustee in any sum; but he is hereby removed as trustee and directed to pay the costs of these proceedings; and, further, that he shall account to and pay over to the said Mollie G. Tiffany the net income received from investments since the last payment thereof to her, to wit, April 30, 1922.

From Gerritt E. Gardner, Montrose, Pa.