## Kellberg's Appeal. Kellberg's Estate.

| 86 | 129 |
|-----|------|
| 183 | 133 |
| 86 | 129 |
| 198 | 435 |

1. Where it is clear that the relations between the administrator and the legal representatives of a decedent are not harmonious, and it is manifest that the interest of the administrator is adverse to those of such representatives, nothing but some controlling necessity will justify his retention as administrator.

2. An inventor assigned his patent for his invention to a company for a royalty, to be paid quarterly. After his decease, the secretary of the company induced the widow of decedent to renounce to him her right to administer and himself took out letters of administration upon the estate of the decedent and refused thereafter to enforce any claim against the company for the royalty, alleging that the claim expired with the inventor's death. The widow petitioned the Orphans' Court for the removal of the administrator for mismanagement and that court dismissed her petition: *Held* (reversing the court below), that there was neither necessity nor just nor legal reason why a representative of the company, in order to promote its interests, should at the same time be the representative of the decedent's estate, and the prayer of the petitioner should have been granted.

3. *It seems*, that under the Acts of Congress for recent years, the assignees of a deceased patentee, to secure a re-issue of the patent which they hold, need not first obtain the participation of the personal representatives of said patentee, but may make direct application therefor.

January 21st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1878, No. 57.

Appeal of Laura M. Kellberg from the decree of the court refusing her petition to vacate letters of administration granted to Frank B. Williams, in the estate of her deceased husband, John W. Kellberg.

The petition and the answer of Williams are substantially set forth in the opinion of this court.

In the.court below, Hanna, J., in dismissing the petition said (O'Brien, J., dissenting):—

" This matter having been heard upon petition and answer, without a replication, the answer must be taken to be true in all its

[Kellberg's Appeal.]

allegations. In effect, the petitioner demurs to the answer : Bright. Eq. 528; Russell's Appeal, 10 Casey 258 ; Thomas *v.* Ellmaker, 1 Pars. 98.

" The grounds stated for the vacation of the letters of administration and removal of respondent are, that the petitioner, who is the widow of decedent, was unduly and improperly influenced by the respondent to renounce her right to administer, and that since obtaining letters of administration he has mismanaged the estate.

" As to the first cause of complaint, the answer contains an unqualified denial, ' that any inducements of future advantage to the estate were held out to the petitioner to induce her to allow respondent to administer.' And the mismanagement complained of appears to consist in the delay and unwillingness of the administrator to institute a suit against the former employers of decedent to recover moneys which petitioner is advised are due to the estate. The administrator admits he has delayed bringing suit, but avers he is ready and willing to commence the same ; and alleges as the reason for his past delay that three several counsel, with whom he consulted, advised him, as matter of law, against his right to recover in such suit.

" It also appears that the administrator was not in the possession of funds of the estate to enable him to commence and prosecute legal proceedings, as the decedent at the time of his death was not the owner of any real estate, and had but a very small amount of personal, all of which has been retained by the petitioner. In view of all the facts appearing from the petition and answer, and applying the well-settled rule of pleading referred to, we are unable to discover any just reason for vacating the letters of administration and removing the respondent. It may also be stated as an additional reason for declining to grant this application, that the year allowed by law for the settlement of the estate will soon expire, when, upon the adjudication of the account of the administrator, the question as to his liability for the delay complained of can be fully determined.

" The petition is therefore refused."

This refusal was the error alleged by the petitioner, who took this appeal.

*J. Cooke Longstreth* and *Leonard Myers,* for appellant.—The failure of the administrator to take any steps to assist or enforce this claim for royalty until cited, was such mismanagement as brought him within the provisions of the Act of May 1st 1861, Purd. Dig. 454, pl. 242, Pamph. L. 680, under which this application was made. But suppose this to be the case of a stranger administrator neglecting to present or enforce a claim for three quarterly payments, each falling due after his intestate's death. This, it is contended, is mismanagement: Piper's Appeal, 8 Har-

ris 67 ; Chew's Estate, 2 Pars. 153; Harper v. Straws, 14 B. Mon. 48 ; Winship v. Bass, 12 Mass. 199 ; Thayer v. Homer, 11 Metc. 104; Drake v. Green, 10 Allen 126. Because counsel should give an adverse opinion on the construction of the contract to the claim, it does not follow that the estate should not have a chance to prosecute it through other instrumentalities than proceedings instituted by or in the name of an officer of the debtor corporation—provided the claim be not palpably absurd. Looking at the words only of the contract between Kellberg and the Bullock Printing Press Co., the payment of $150 every three months thereafter was without limitation of time, and, strictly construed, would imply a perpetually recurring liability. The suggestion that the assignees of a patent can be relieved of liability for royalties by the death of the inventor has at least the merit of novelty.

*Peirce Archer, Jr.*, and *Lewis C. Cassidy*, for appellee.—If the object be simply enforcement of the contract by suit against the Bullock Company to compel payment of the sums named, during the running of the patent, then the appellant has ample remedy, as the appellee has never been requested to bring such suit, and therefore has never refused, though without means to do so, but is ready and willing to sue, or permit the appellant to use his name to sue, for the alleged breach of the agreement. The construction of the contract of assignment of the patent, as to whether the payments ceased with the life of the assignor, was referred by the appellee to three members of the bar in succession, whose unanimous opinions and advice were against the right of recovery. It is submitted that this acquits him of the charge of bad faith. The intestate left no other estate. How, then, can it be said that the appellee is wasting or mismanaging it ?

The recent case of Parsons's Appeal, 1 Norris 465, is an adjudication upon the proper construction of the Act of May 1st 1861, under which these proceedings were carried on. In that case Judge SHARSWOOD said, p. 467 : "It is a stringent and summary process to remove an executor, and it must clearly appear from the evidence that a case was made out under it, and that the discretion of the court was properly exercised. It must clearly appear that the executor is wasting or mismanaging the property or estate under his charge."

It is submitted there is no justification for the present proceeding, and that if the appellant simply desired her rights under the contract tested, she has ample opportunity by suit at law, or by motion to surcharge the accountant when he files his account at the end of the year.

Mr. Justice WOODWARD delivered the opinion of the court, May 6th 1878.

At the time of the death of John W. Kellberg, on the 1st of November 1876, an agreement was in force between the Bullock Printing Press Company and himself, which had been executed on the 4th of April 1874, with the stipulation that it should date from the 1st day of July 1873. By this agreement Kellberg assigned to the company all his interest in certain patents which had been issued to him for improvements in printing machines, the company promising, among other considerations, to pay him, he having been and consenting to remain in their employment, "in addition to his regular salary of twenty-six hundred dollars, the further sum of one hundred and fifty dollars every three months thereafter; that is to say, on the first day of the months of July, October, January and April."

On the 18th of August 1877, the petition of Laura M. Kellberg, the appellant, and the widow of the decedent, was presented to the Orphans' Court, averring that after her husband's death, she and her son, then a minor, were induced to renounce their rights to letters of administration, by the representations of Frank B. Williams, the secretary or business manager of the Printing Press Company; that they wanted the patents, which her husband had assigned to them, renewed, and had a right to the renewals; and by his assurance that if any advantage should come to her husband's estate, she should have it. Williams thereupon was appointed administrator. The petition then complained, that from the time of his appointment he had refused to assert any claim against the company for the quarterly payments accruing after Kellberg's death, on the ground that the right to them ceased at that time, whereas the petitioner insisted that the right was to continue during the term of the letters patent, which had still several years to run. Alleging mismanagement of the estate, the petitioner prayed the removal of Williams, and the grant of administration to herself.

The answer denied, in express terms, that any suggestion was made to Mrs. Kellberg of future advantage to her husband's estate, to induce her to renounce her right to administer in favor of the respondent. It alleged that the only reason for taking out letters, was the rule of the patent office requiring personal representatives of original patentees to apply for re-issues of patents, notwithstanding an assignment. The respondent also declared that he was ready and willing to bring suit against the company for the quarterly payments, or to permit the use of his name for that purpose by the petitioner's counsel. He explained the reason why proceedings had not been begun, to be, that he had been advised by counsel that, as matter of law, the quarterly payments stopped with the death and salary of the intestate. As the replication filed by the petitioner was withdrawn from the record before the hearing, the rights of the parties must rest on the uncontroverted facts disclosed by the petition and answer.

[Kellberg's Appeal.]

It is clear that the relations between the administrator and the legal representatives of the decedent are not harmonious. It may or may not be that a continuing liability for the quarterly payments stipulated for in the agreement of the 4th of April 1874, survived Kellberg's death. Whatever the event, the question is one which the appellant has a right, in a proper forum, to have tried. The manifest interest of the administrator is on the side of the company, and there would be not only incongruity, but hazard of delay, mistake or wrong, in leaving him to represent a claim to which his business relations render him directly adverse. Nothing but some controlling necessity would justify his retention in his position, and no such necessity is indicated by the facts presented. In Hassinger's Appeal, 10 Barr 454, the opinion was *per curiam*. It was said that " there are certainly prima facie rights to priority of administration; but they may be controlled by evidence of incompetence, or unfitness from circumstances." There the interests of some of the next of kin were antagonistic to those of the decedent, and the court held that administration "ought to be committed to an impartial stranger to them, who alone would have their confidence, or would perhaps deserve it." In referring to some English authorities which had construed the statutes of 31 Edw. 3, and 21 Hen. 8, Judge ROGERS said, in Ellmaker's Estate, 4 Watts 34, that " the right to administration is put expressly on the ground of interest, on the reasonable presumption that the person most interested to increase the estate is most competent to administer." The office of administrator is one of trust and confidence, and ought not to be committed to an heir who has an interest in opposition to other heirs of the estate : Bieber's Appeal, 1 Jones 157. " Courts," in the language of Judge BURNSIDE, in that case, "have constantly declined putting in persons as administrators so situated." Winship v. Bass, 12 Mass 199, involved the construction of a statute which authorized the intervention of the judges of probate, when any executor or administrator should become insane, or otherwise incapable of, or evidently unsuitable to discharge the trust reposed in him. The controversy arose out of the refusal of an executor to pay a debt due by him to his testator's estate, until compelled by the judgment of a court. It was held, Parker, C. J., delivering the opinion, that it was " unsuitable that he who represents the estate, and without whose agency a suit cannot be conducted, should remain in office when such suit may be necessary to coerce the payment of the debt." In this state, authority to remove any executor, administrator, guardian, committee of a lunatic, habitual drunkard, or any other trustee, was conferred by the first section of the Act of the 1st of May 1861, whenever, among other causes, it should be made to appear that he was wasting or mismanaging the property under his charge, " or that, for any reason, the interests of the estate or property are likely to be jeopardized

by the continuance of such executor, administrator, guardian, com-
mittee or trustee." Here there are at least alleged interests involved,
as to which the views of the administrator and those of the legal
representatives do not coincide. Their conflicting relations make
jeopardy to those interests possible. In any legal steps the appel-
lant may desire to take in the enforcement of her claims, she is
entitled to the unhampered use of her own process, and the estate
has a right to be freed from the fetter of a hostile representative,
passive though the hostility may be.

In his answer to the petition, the respondent suggested that the
vacation of the letters of administration granted to him would cause
irreparable harm and inconvenience to the assignees of the dece-
dent in procuring re-issues of the patents which they hold. The
participation of the personal representatives of deceased patentees
in applications for extensions could always be readily enforced if
such participation were legally required. But the Acts of Congress
of recent years have apparently not contemplated any action on the
part of executors or administrators in the cases of extensions of
patents granted to original patentees, who, having made assign-
ments while living, have subsequently died. The 11th section of the
Act of the 4th of July 1836, made every patent assignable in law,
either as to the whole interest, or any undivided part thereof, by any
instrument in writing. The 13th section, which related to the sur-
render and re-issue of defective patents, conferred, in the case of
the death of the original patentee, or of an assignment by him, all
the rights to which, if living, he would be entitled, upon his ex-
ecutors, administrators or assignees. By the 18th section, it was
declared that the benefit of any renewal of a patent for seven years
should extend to the assignees and grantees of the thing patented,
to the extent of their respective interests therein. By the 6th sec-
tion of the Act of the 3d of March 1837, any patent thereafter to
be issued could be made and issued to the assignee or assignees of
the inventor or discoverer, the assignment thereof being first en-
tered of record, and the application therefor being duly made, and
the specification duly sworn to by the inventor. And by the 33d
section of the Act of the 8th of July 1870, "to revise, consolidate
and amend the statutes relating to patents and copyrights," it was
enacted that patents might be granted and issued or re-issued to the
assignee of the inventor or discoverer, the assignment thereof be-
ing first entered of record in the patent office; but in such case,
the application for the patent was required to be made and the
specification sworn to by the inventor or discoverer; and also, if he
should be living, in case of an application for a re-issue. It was
stated by the appellant's counsel on the argument that the rules of
the patent office have been framed in precise conformity to the sta-
tutes. There is neither necessity nor just or legal reason why a
representative of the Bullock Printing Press Company should, in

order to promote their interests, be at the same time the represent-
ative of John W. Kellberg's estate.

> The decree of the Orphans' Court is reversed, at the
> cost of the appellee; and it is now adjudged and
> decreed that the prayer of Laura M. Kellberg be
> granted. And it is ordered that the record be re-
> mitted that this decree may be carried into effect.