John Marsden's Estate.    William C. Marsden's Appeal.

| 166 | 213 |
|-----|-----|
| 187 | 371 |
| 166 | 213 |
| 191 | 409 |
| 166 | 213 |
| 198 | 435 |

| *166* | 213 |
|-------|-----|
| f205 | *414 |

*Trusts and Trustees—Removal of trustee—Practice, C. P.*
Where the existence of hostile relations between the trustee and the cestui que trust works disadvantage, inconvenience or great discomfort to the latter, the trustee will be removed.

A brother was trustee for his sister, but during the whole period of the trust had no communication with her, and did not consult her or any one on her behalf with regard to the repairs to her real estate, although the amount thus expended was more than half of the entire gross income. The trustee moved his residence to another county from that in which his sister lived, and in which he was liable to account.   *Held,* that the trustee should be removed.

Argued Jan. 9, 1895.   Appeal, No. 507, Jan. T., 1894, by trustee, from decree of O. C. Phila. Co., July T., 1894, No. 116, removing trustee.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Petition to remove trustee.

The petition of Hannah Marsden averred in substance:

That John Marsden, by will probated June, 1874, inter alia, devised certain real estate in Philadelphia to his son, William C. Marsden, in trust, to pay over the net income to his daughter Hannah during life; upon her decease, after her youngest child had attained 21 years, or immediately if her youngest child was over that age, to convert the same into cash and divide the proceeds among such children; or if such children should not survive to the period of distribution, then he gave the same to his said son in fee.

That petitioner had been divorced from her husband and had assumed her maiden name, as had her two sons, aged 33 and 30 respectively.

That under said will, their mother, Sophia Marsden, had had the life use of all of said real estate, she paying taxes, etc.; that Sophia Marsden had died in September, 1892, having previously paid the taxes for the current year and made the necessary repairs; that such premises were assessed for taxation at $17,400, and, after the payment of taxes, etc., had yielded for the three previous years about $2,000 per annum net.

That since Jan. 1, 1893, William C. Marsden had been collecting the rents, but at time of filing petition [July 29, 1893] had not paid any portion thereof to petitioner.

That William C. Marsden is or had been, up to July, 1893, employed as a street car conductor, and is not possessed of any personal qualifications fitting him to exercise the office of trustee.

That for the above reasons she prayed the court that she might be permitted to choose her trustee to execute said trust, under the act of April 9, 1868, offering to enter security for the protection of the contingent remainder of William C. Marsden.

That William C. Marsden and his mother had had a contest over the will of the father, in which the son was successful. That the mother, in her own will, after condemning the action of the son, left all her property to her daughter. That from the time of the said will contest in 1877 until the present there has been no intercourse between petitioner and her brother; that she is informed that he has manifested, in speaking of her, an unkindly and unbrotherly feeling.

And praying for a citation to show cause why he should not be dismissed from his office, etc.

The answer admitted the will of John Marsden; the divorce of Hannah Marsden; the death of Sophia Marsden; the payment by her of the taxes of 1892 upon the real estate; the taxation amount of the property; but denied that the necessary repairs had been made, or that the annual rent income had been $2,000.

It averred that upon the trustee taking possession after his mother's death, he found the houses all to be in very bad condition, requiring large sums of money to make them habitable; gave the details of what had to be done to preserve the properties and retain the tenants; that such expenditures had already amounted to $600, and that absolutely necessary further repairs had to be made at once; that the net annual rentals, without allowance for repairs or loss of rent, was but $1,667.13; and that as all of the houses were 40 to 50 years old, much would be needed each year to maintain them.

It further answered, that Sophia Marsden, the widow of John Marsden, had been blind for 30 years, was in her 90th year when she died and had then been confined to the house for 20 years; that the petitioner and her sons, who had lived with Sophia Marsden, had had the active charge of these properties for Sophia Marsden, the latter being incapacitated by her affliction from taking any active part in their management; that respondent believed that the petitioner and her sons had derived the benefit of the income of the properties; that the entire estate of Sophia Marsden was but $250, although Sophia Marsden had had a total annual income of $3,000.

It further answered, that respondent had in his hands a balance of income of $461.37, which he had not paid over to the petitioner, because it would be needed for the balance of the repairs for the preservation of the property.

The respondent admitted that he had been employed as a street car conductor, but stated that he had voluntarily left that occupation and was about to take up the produce business; that he made periodical monthly visits to Philadelphia to collect the rents; that he was an individual real estate owner, had had an experience of 20 years in the management of his own business affairs, and was especially qualified to exercise the office of trustee of this estate.

He denied that he had ever been an unkind and undutiful son to his mother; asserted that he had endeavored to fulfill every filial duty; that it was his duty, as executor, to contest the alleged will of his father; he admitted that there had not been any especial intercourse between himself and his sister since 1877, but denied that he had ever manifested or possessed any unkind or unbrotherly feeling to her; he averred that his sole purpose in the administration of the trust was to perform his entire duty to all interested; that he believed himself to be fully competent to perform such duties; that every step taken by him had been under advice of counsel, and that there was no reason, moral, legal or otherwise, why he should not be permitted to continue in office.

Evidence was taken by both petitioner and respondent as to the value of the repairs on the real estate, etc. The expenses of visits to Philadelphia to collect the rents were not charged in the account.

The case was heard on petition, answer and proofs.

The following opinion was filed by PENROSE, J.:

"The power of the court under the act of April 9, 1868, to appoint a new trustee, while it is not to be exercised capriciously, or at the mere whim of the cestui que trust (Stevenson's Appeal, 68 Pa. 101), is not dependent upon the misconduct of the trustee sought to be superseded; and it is enough to show that his retention, by reason of the existence of hostile relations between him and the cestui que trust, would naturally work disadvantage, inconvenience or great discomfort to the latter: Hillis's Estate, 9 W. N. 421. See also Kellberg's Appeal, 86 Pa. 129; Seyfert's Estate, 3 W. N. 565; Gaul's Estate, 12 Phila. 13.

"That such has been and is the character of the relations in the present case is clear from the testimony of the respondent himself, and from the admitted fact that, since 1877 to the present time, though the cestui que trust is his sister, there has been no intercourse or communication between them; while during the year or more in which he has been acting as trustee, he did not consult her, or any one on her behalf, with regard to his repairs of real estate, though the amount thus expended was more than one half of the entire gross income debited in his account. And there is the further fact that the respondent

now lives in Towanda, and apart from the question of the additional expense occasioned by visits for the purpose of attending to the trust, it may be better for the interests of all concerned that its management should devolve upon a resident trustee."

Trustee dismissed and new trustee appointed.

*Error assigned* was decree.

*Joseph de F. Junkin*, *George Junkin* with him, for appellant, cited: Acts of April 7, 1859, § 1, P. L. 406; May 1, 1861, P. L. 680, §§ 1, 2; April 9, 1868, § 1, P. L. 785; May 17, 1871, P. L. 269; Stevenson's Ap., 66 Pa. 101; Parson's Est., 82 Pa. 465; Kellberg's Ap., 86 Pa. 129; Gaul's Est., 12 Phila. 13.

*David W. Sellers*, for appellee, cited: Stevenson's Ap., 68 Pa. 101; Lancaster's Ap., 111 Pa. 524.

PER CURIAM, Jan. 21, 1895:

All that is necessary to be said in defence of the decree dismissing appellant from his office of trustee under the will of his father, etc., will be found in the opinion of the learned judge of the orphans' court. On that opinion we affirm the decree and dismiss the appeal with costs to be paid by the appellant.