## Fleming's Estate

*A. J. Straub*, of *Straub, Blatt & Sorg*, for petitioner.
*Fred McFarlin*, for respondent.

RIMER, P. J., April 28, 1938.—This comes before the court on the petition of George Fleming, one of the executors of the last will of Patrick J. Fleming, Sr., late of Elk County. This will was duly probated therein on December 26, 1937. In this will the above-named petitioner and George F. Hauber were named as executors and letters testamentary were issued to them on December 29, 1937.

Petitioner sets forth that the said will was prepared and written by his coexecutor on February 11, 1937, at which time he, George F. Hauber, was not a member of the bar or court of record of the Commonwealth of Pennsylvania, stating that this was contrary to the Act of July 12, 1935, P. L. 708.

Reference is also made in the petition to a bill in equity pending in the Court of Common Pleas of Elk County asking that Hauber be restrained from engaging in the practice of law. It further sets forth that a majority of the legatees and beneficiaries named in the will have requested Hauber to resign as executor, as

evidenced by an exhibit attached to the petition, and that petitioner is informed and believes that the interests of the estate or property of testator are likely to be jeopardized by the continuance of Hauber as executor.

The prayer is for a citation to said Hauber to appear and show cause why he should not be removed as such executor and letters vacated as to him.

Respondent, George F. Hauber, neither admitting nor denying that he prepared the will for said testator, admits that he was not a member of the bar of Elk County on February 11, 1937. He denies that a majority of the legatees have requested him to resign as such executor, and attaches the request of five of such legatees that he continue to act, and denies that the interests of the estate and property are likely to be jeopardized by his continuance as such executor.

A hearing was had in this cause on February 18, 1938, and from the evidence offered the court finds the following facts:

1. Respondent, George F. Hauber, was not, during the period covered by the matters complained of, a member of the bar of a court of record of the Commonwealth of Pennsylvania, respondent specifically admitting, in addition thereto, that he was not a member of the bar of Elk County on February 11, 1937, the date of the will above described.

2. On February 11, 1937, respondent prepared and wrote for the testator the will above recited, differing in vital respects from the will which respondent had written for testator on April 19, 1934, which is exhibit 3 in this case.

3. In both said wills respondent inserted his own name as one of the executors of the will along with the name of George Fleming, petitioner.

4. The will thus probated was left in the possession of respondent by the testator and such possession was retained until after testator's death, when the children of

testator and legatees under his will were called to his office and the will read.

5. When the will was presented to the register of wills in and for the said county, he refused probate thereof until presented by an attorney. Thereupon A. J. Straub, Esq., was called in and the will probated and letters issued to the persons named therein.

6. The following day respondent advised his coexecutor that they ought to make an appraisement, and that it would be alright for Edward Fleming, a son of testator, to act as an appraiser, suggesting at the same time, as the other appraiser, L. G. Hauber, his son.

7. On December 29, 1937, the day of testator's funeral, respondent produced a paper, exhibit 1, the usual blank for taking inventory and appraisement in a decedent's estate, in which the affidavit of the appraisers was filled out as of December 30, 1937, but with no jurat attached, although the date of the expiration of the officer's commission is given. The signatures of Edward Fleming and L. G. Hauber appear on this affidavit and the concluding paragraph of the appraisement is signed in blank, no items appearing thereon. The signatures of said alleged appraisers were affixed to this instrument the same day, and a day or two later respondent handed the paper to his coexecutor.

8. About this time the said executors, with the persons above named who had signed as appraisers, opened testator's safe deposit box and made a list of the securities therein found, which is marked exhibit 2 and offered in evidence. The list totals $41,399.67.

9. Respondent advised the four persons thus present that these items of security could be entered at their face and not their real value, and this advice was followed in making out exhibit 2, above mentioned.

10. Respondent placed in the local paper exhibit 5, the legal notice of the issuance of letters, by error stating that letters of administration in said estate had been

granted to respondent and petitioner, giving their names as "Administrators". Petitioner was not consulted as to this.

11. Respondent required from his coexecutor a list of the indebtedness of testator, stating that he wanted proper papers for inheritance tax purposes. Immediately after the issuance of letters testamentary to petitioner and respondent in this case, respondent notified the counsel who had assisted in the probate of the will that he was discharged, since which time said counsel has been acting in the employ of petitioner alone.

12. On May 12, 1936, respondent prepared for his coexecutor, George Fleming, a will, which was executed at the time and was offered as exhibit 4.

13. On or about November 26, 1936, respondent prepared for John Mohr, a resident of the township in which testator lived, a will, in which respondent was named as sole executor and upon which letters testamentary were issued by the Register of Wills of Elk County on October 25, 1937.

14. Respondent engaged in the practice of law in respect to the drawing of the will of testator, above mentioned, without being a member of the bar of a court of record, in advising, etc., as to the law with reference to the entering of credits upon the several notes of which his sons were the makers, and which were produced by testator at the time of the drawing of the last will with request that certain credits be entered thereon. Respondent not only advised as to how this should be done but also endorsed upon the body of the notes the requested credit and had testator sign the same.

15. The feeling of hostility which exists between respondent and his coexecutor and several other of the heirs of testator, legatees under his will, is so marked that the interests of the estate are likely to be jeopardized by the continuance of respondent as one of the executors under the will of said testator.

16. Respondent, throughout his testimony, gave such evidence of his "rule or ruin" character as to convict himself of unfitness to continue in this trust. Apparently disdaining the aid of his counsel in developing his side of the case, he introduced matters which were irrelevant to the issue, apparently with a purpose of exposing those whom he assumed to be opposed to him to the scorn and ridicule of the public.

17. By his own evidence, respondent necessarily added to the feeling of hostility between himself and his co-executor and certain other of the parties in interest. Without regard to common decency and in no way responsive to any question of his counsel, he gave in evidence alleged statements of testator, made at the time of the drawing of the will, which must have outraged the feelings of the persons at whom they were directed, embittered the feelings of these legatees against their father and benefactor, and humiliated them beyond degree, whether believed or not.

18. By his manner of testifying and self-assertive disregard of the aid and counsel of his attorney throughout the trial, he showed himself to be unfit to this position of trust.

## Conclusions of law

1. In respect to the drawing of the will of testator in this case and the insertion of his name therein as one of the executors, respondent, not being a member of the bar of a court of record of the County of Elk or of the Commonwealth of Pennsylvania, was engaged in the practice of law.

2. Under the facts found, this respondent, in the preparing of papers and in the advice given in and about the administration of the estate of Patrick J. Fleming, Sr., deceased, was engaged in the practice of law in the County of Elk and within the Commonweatlh of Pennsylvania, without being a member of the bar of a court of record, in violation of the Act of 1935, supra.

3. The paper, exhibit 1, purporting to be an inventory and appraisement in the estate of this testator, as prepared by respondent, including the procuring of the signatures of the two alleged appraisers to the affidavit therein and the return thereof, as coupled with the apparent intent to have the items of personal property of the decedent inserted therein, was in the nature of a fraud against the parties interested in said estate.

4. Respondent, thus practicing law in respect to this estate without being a member of the bar of a court of record, violated the Act of 1935, supra.

5. This court has jurisdiction over the subject matter of this citation to remove respondent as one of the executors in this estate upon the grounds that the interests of the estate are likely to be jeopardized by his continuance as such fiduciary.

6. Under the facts developed in this case, viz., that respondent inserted his own name as one of the executors when he was engaged in the practice of law in violation of the Act of 1935, continuing to so practice law in the administration of the estate, and that by his own act he has increased the hostility heretofore existing between himself and his coexecutor and certain of the legatees and generally shown himself unfit to continue in the trust; also that the estate of this testator is likely to be jeopardized by such continuance, this court has the power to remove him as such executor and vacate the letters testamentary issued to him and it is the duty of the court so to do.

### Discussion

The acts of assembly directly involved herein are as follows:

The Act of 1935, supra, which provides in section 1: "any person who shall practice law, within this Commonwealth, without being a member of the Bar of a Court of Record, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced".

Prior to this act the provisions relative to the unauthorized practice of law related to those persons, not duly and regularly admitted to practice law in a court of record of any county within this Commonwealth, advising or holding themselves out to the public as being entitled to practice law. The act above cited was passed to remedy a very common and serious evil. More and more, as time went by, those authorized to practice law in our courts (and this included the courts held by the several registers of wills within the Commonwealth) were bound to undergo a long and intensive study of their profession, as well as severe and discriminating examinations as to ability and general character.

This proceeding is brought under the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 53, 20 PS §921 et seq. This act gives the orphans' court having jurisdiction of the accounts of an executor exclusive power to remove such executor and vacate the letters testamentary upon cause shown, for several reasons. The one under which these proceedings are had is as follows:

"When, for any reason, the interests of the estate or property are likely to be jeopardized by the continuance of any such fiduciary".

While the petition for citation upon respondent might well have been more specific, the court deems it sufficient to determine the case upon the theory and for the causes developed by the counsel for both parties at the hearing. Briefly stated, they are: (a) That in respect to the drawing of the will and the administration of the estate, so far as it has proceeded, respondent has been guilty of the practice of law without being a member of the bar of a court of record, made a misdemeanor by the Act of 1935; and (b) that the relationship between respondent and his coexecutor and certain of the heirs of the testator who are legatees under his will is so hostile that the interests of this estate are likely to be jeopardized by his continuance as such executor.

As to the first reason no cases have been cited which might be considered precedents. We find that Chief Justice Kephart, in Friese's Estate, 317 Pa. 86, 90, gives amongst the disqualifications rendering any person unfit to administer an estate, the following:

". . . insolvency, nonresidence, conviction of crime, claim of interest hostile to the estate, unfriendly feeling between the parties, dissatisfaction and antagonisms between the widow and children."

On the disqualification "conviction of crime", we have the citation of the Case of Jacob Altemus, 1 Ashm. 49. But in that case there was no evidence of conviction, although the court said that, had it been averred, "we should have heard it, and considered its effect." There respondent was the husband of decedent and the court held him entitled to the letters. This case would hardly be considered an authority for holding that the conviction of a crime would be an absolute disqualification. The present case might be distinguished in this, that here respondent attempts to profit by his own unlawful act, that of having himself appointed as executor of the testator whose will he was then drawing, in violation of our act of assembly forbidding the practice of law by a layman.

On the second reason we have been able to find authorities recognizing that hostility between an executor or administrator and the persons interested in the estate may be held a reason for the removal of the fiduciary, but usually where there is some other moving cause such as an interest adverse to the estate or to some of the parties interested therein. Such an authority is the opinion of Judge Rhone, in Dayton's Estate, 1 Luz. L. R. Rep. 118, a proceeding under the Act of May 1, 1861, P. L. 680, who cites Kellberg's Appeal, 86 Pa. 129, as authority for the statement, "that where it is clear that the relations between an executor and the heirs are not harmonious, and it is manifest that the interest of the executor is ad-

verse to those of the heirs, nothing but some controlling necessity will justify his retention as executor."

It is true that the case then for decision was a case where the executor had mismanaged the estate. Kellberg's Appeal, supra, had this in common with the present case, as applied to the first reason asserted by petitioner, in that the administrator had obtained the renunciation of the widow by false representation. There was also a charge of mismanagement. The trial court refused the petition; the Supreme Court reversed upon the ground that the estate had a right to be freed "from the fetter of a hostile representative, passive though the hostility may be."

The action of the court in the case cited was based upon that provision of the Act of 1861, supra, which provided, as a reason for the removal of an executor, "or that for any reason the interests of the estate or property are likely to be jeopardized by the continuance of any such executor", substantially reënacted in our Fiduciaries Act of 1917, supra.

In Tiffany's Estate, 5 D. & C. 727, Judge Smith found that the trustee whose removal was sought had not been guilty of any mismanagement and refused to surcharge him, since the evidence of mismanagement was insufficient for that purpose, but ordered him removed as trustee because his relations with a beneficiary of the trust were unfriendly, based probably upon the fact that he was a stepson of the beneficiary and might possibly, under certain conditions, be adversely interested.

We recognize that the removal of a fiduciary is a drastic action and should not be taken without a substantial reason. Active antagonism of the beneficiaries of an estate toward the fiduciary is not sufficient to impel the court to order the latter's removal, unless provoked by him and likely to jeopardize the estate: Neafie's Estate, 199 Pa. 307.

Here the relationship between respondent and his co-executor and at least several of the parties in interest in the estate differs greatly from that found to be under consideration in Mathues' Estate, 322 Pa. 358. There the fiduciary had acted in good faith, under the advice of counsel, and any antagonism which existed was provoked by parties in interest other than the fiduciary and was without merit.

In Warner's Estate, 207 Pa. 580, Mr. Justice Brown had under consideration a case in which the widow had joined in the execution of an antenuptial agreement which was later held to be unconscionable. The two sons of decedent represented to the widow that she had no right to administer and she renounced in their favor. After being advised of her rights she petitioned for a revocation of the letters of administration. This was granted and the register of wills ordered to issue letters. It appears that letters were subsequently granted to the widow. The decree was reversed with directions to the register of wills to issue letters to some disinterested fit person, if the parties in interest could not agree. The court said:

"With the antagonisms and differences existing between the appellee and the two sons of her husband by his former marriage, the best interests of the estate will be promoted by committing the administration of it to some disinterested fit person to be appointed by the register of wills, if the parties to this controversy cannot agree upon an administrator. By such appointment, though the present differences may continue, controversies, and disputes otherwise certain to take place between the appellee and her stepsons will be avoided."

In Marsden's Estate, 166 Pa. 213, the opinion of the court below, removing a trustee under a will, was affirmed by the Supreme Court, per curiam, on the opinion of the court below. In that opinion the court found that the trustee had no intercourse or communication with his sister, the beneficiary, during the year or more in which he had been acting. He did not consult her or anyone in

her behalf with regard to repairs, etc. There was no claim of mismanagement, the trustee averring that he had no unkind feeling toward his sister; that his sole purpose was to perform his entire duty; that he believed himself to be competent; that every step taken had been under advice of counsel, and that there was no reason, moral, legal, or otherwise, why he should not be permitted to continue his office. But Penrose, the trial judge, said:

"The power of the court under the act of April 9, 1868, to appoint a new trustee, while it is not to be exercised capriciously, or at the mere whim of the cestui que trust (Stevenson's Appeal, 68 Pa. 101), is not dependent upon the misconduct of the trustee sought to be superseded; and it is enough to show that his retention, by reason of the existence of hostile relations between him and the cestui que trust, would naturally work disadvantage, inconvenience or great discomfort to the latter".

Particularly in point here is the decision of the Supreme Court in Myers' Estate, 205 Pa. 413. The trial court had found that owing to the hostile relations between appellant and his cotrustee, the retention of the former would naturally work disadvantage, inconvenience, and discomfort to the latter, and that the petition was brought by reason of an irreconcilable antagonism which resulted largely from the dogmatic, domineering, and ungentle behavior of respondent toward petitioner, and dismissed appellant from the trust. On appeal the decree was affirmed. No other cause was assigned by the trial judge, but the appellate court noted that another ground existed in that appellant had directed certain tenants to pay the rents to him and not to appellee's agent, without having rightful authority so to do. Such action of course would increase hostility between the parties.

From the foregoing citations it will appear that we do not have the authority of definite decisions to guide us in determining our course in this case. It must be expected that, in proceedings such as this, each case must be decided upon its own facts. The decision must be one of

judicial discretion, unmoved by prejudice. Admittedly, the character of respondent's testimony renders this somewhat difficult. His eagerness to blacken the reputations of those whom he assumed were opposing his continuance as executor led him to inject into his testimony a mass of irrelevant and immaterial statements, regardless of the fact that, even if true, they were given in violation of the confidence reposed in him by the deceased testator.

If, when petitioner closed his case, evidence of his grounds for the removal of respondent carried an element of doubt of their sufficiency, any such doubt was removed by respondent when he went upon the stand in his own behalf. His was a striking example of a litigant being "hoist with his own petard". Impatient of restraint, either that of his counsel or of the court, his sole aim seemed to be an attack upon those assumed to be opposing him, through what purported to be statements of their dead father. As given from the witness stand, it was difficult to ascribe to such statements the element of truth. Whether they were true or not, the objective of respondent was accomplished by the spreading upon the record of this court of the alleged defamatory statements of testator, thus extending to several of his sons and even to a daughter-in-law, not in aid of respondent's cause but to satisfy his hatred. Naturally their sting will not be effaced in years, even if testator's children do not believe that he ever made them.

The antagonism, so evidently existing between respondent and petitioner and certain of the heirs, "resulted largely from the dogmatic, domineering, and ungentle behavior of the respondent", just as in the case of Myers' Estate, supra. It must necessarily be intensified throughout the future by the testimony of respondent. His conduct throughout the whole transaction, beginning with his attempts to control the administration of the estate, his disregard of the law as governing that administration and his conduct upon the witness stand, show his un-

fitness to continue as one of the executors and that such continuance would be likely to jeopardize the best interests of this estate.

We might also add that the fact that this respondent obtained his appointment as such executor in the doing of an unlawful act calls for the statement that courts do not incline to favor one who attempts to capitalize his own unlawful actions.

Under all the evidence in this case, this court is of opinion that respondent should be removed as executor and the following order will be made.

### Order and decree

And now, April 28, 1938, after hearing and upon due consideration, respondent, George F. Hauber, is hereby removed as one of the executors of the last will and testament of Patrick J. Fleming, Sr., deceased, and the letters testamentary heretofore issued to him vacated, for the reasons set forth in the foregoing opinion and the several findings of fact and conclusions of law therein contained.