## Rentschler Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, J. J.

SAYLOR, J., March 7, 1957.—Wilhelmina L. Rentschler, one of the executors and trustees and sole income beneficiary of a residuary trust estate created under the will of her father, George W. Rentschler, has petitioned the court for the removal of Harry J. Alker, Jr., Esq., as testamentary coexecutor and cotrustee and for the appointment of a substitute. The petition avers the indictment and conviction of Alker in the United States District Court in September, 1956, for attempt to evade and defeat the income tax laws by filing false and fraudulent tax returns. It also avers that Alker's counsel at the time of the trial for

these offenses represented that he was suffering from several physical ailments which caused him great pain and discomfort and that he was experiencing great emotional disturbance.

In his answer Alker admits the principal averments of the petition, says that he was operated on with success for his physical ills and denies that he is now working under any emotional distress. He admits the averments regarding his conviction for crime and avers that he is innocent of the criminal charges against him and that there is pending a motion for judgment of acquittal.

The testator died November 14, 1954, leaving a gross estate of approximately $350,000. Letters testamentary were granted December 1, 1954, to the petitioner and the respondent. The Girard Trust Company (now Girard Trust Corn Exchange Bank) named in the will as a coexecutor and cotrustee renounced. Paragraph sixth of the will provides "that at all times there shall be three executors and three trustees . . . one corporate and two individual."

Tradesmens Bank and Trust Company, on petition of Miss Rentschler, petitioner herein, was appointed substituted corporate executor and trustee on April 30, 1956. Alker and Miss Rentschler had alone acted as executors until that date, a period of 17 months.

By paragraph twelfth of his will the testator named Alker or his nominee as attorney for the executors and trustees. He served in that capacity and prepared and on October 3, 1956, filed the executors' account now before the court. It was executed by all three executors, two of whom have been represented by counsel other than Alker since their appointment of David H. Maxwell, Esq., as their counsel.

The account shows the residuary estate amounts to approximately $125,000. It will be augmented by an award of approximately $750,000 from the estate

of decedent's brother, Henry C. Rentschler, pursuant to adjudication of this court.

Petitioner and the corporate executor through counsel have asked the auditing judge to award the residuary estate to them and a new third trustee. Respondent seeks the award to himself and his present colleagues.

Following the death of Miss Rentschler, failing issue, the trust becomes one of charitable character and permanent nature.

At the hearing on petition and answer witnesses for both parties testified and documentary evidence was introduced.

Dr. McCabe, Alker's physician, testified that his physical condition is now greatly improved and that it does not impair his mental faculties, and that he can carry on the everyday duties of his profession.

Mr. Bradley, cocounsel for Alker in the Federal criminal trial, testified that since the trial Alker has shown a marked improvement in his physical condition, to all appearances, and that there has been a tremendous improvement in his mental attitude.

Mr. Horan, a trust company president, testified that he had known Alker for 40 years, had transacted estate business with him and that Alker was now able to administer estates and look out for their legal rights as well as prior to his illness.

Two officials of Tradesmens Bank and Trust Company, the corporate trustee of the Rentschler Estate, that testified that they had known Alker for about 30 years, they had dealings with him in estate matters and that he knew what it was all about, coöperated satisfactorily with them in the past and knew as much about the handling of an estate as a great many other lawyers.

None of these witnesses, however, was aware of the details or the substantive matters involved in Alker's

handling as fiduciary or attorney of estates in which his conduct has been the subject of charges of incompetency and irregularity as hereinafter considered. Nor are they beneficiaries of the estate here involved.

The petitioner testified that as a coexecutor Mr. Alker confused her constantly, refused to explain things to her and was dilatory and misled her in many ways. She said that she did not think things would be any better if he were a cotrustee even with a corporate trustee as well. She stated that she was dissatisfied with Mr. Alker and had no confidence in him any more due to her experience with him.

There are in the record facts materially bearing on the question of the fitness and qualification of respondent to serve as a trustee of an estate under the jurisdiction of this court. They relate to criminal indictments and conviction, to charges of improper conduct as executor of a will and to complaints to boards of censors of professional misconduct as counsel for estates. These matters will be considered in that order.

### 1. Indictments and Conviction for Crime

In the United States District Court for the Eastern District of Pennsylvania on April 11, 1955, under criminal no. 18306, Alker was indicted on four counts for wilfully and knowingly attempting to evade and defeat the whole of income taxes due by him for the calendar years 1947 to 1950, inclusive, by filing false and fraudulent tax returns, thereby violating the Internal Revenue Code. Trial by jury on this indictment was held in June and September, 1956, resulting in conviction on all four counts.

Thereupon the trial judge imposed on Alker a sentence of one year and one day and a fine of $10,000 on each of the first three counts, the sentence of imprisonment to run concurrently, and on the fourth count imposed a sentence of three years to run con-

secutively to the sentence on the first three counts. On the fourth count the trial judge suspended sentence and placed defendant on probation for three years.

Thereafter Alker filed a motion for a new trial and a motion for judgment of acquittal. Both motions are pending.

Other indictments against Alker have been returned by the Federal Grand Jury. Under criminal no. 18730, Alker is charged on three counts with filing a false and fraudulent estate tax return in the estate of Winfred S. Hurst, deceased, with delivering to Federal tax agents documents known by Alker to be fraudulent and false as to material matters and known by him to be forgeries and with delivering to a Federal tax agent a false statement of schedules and exhibits concerning the assets of that estate and photostatic copies of documents purportedly signed by the said decedent and known by Alker to be forgeries.

Under criminal no. 18731 the same Federal Grand Jury indicted Alker and Horace S. Rhoads for conspiring with various parties to evade and defeat a large part of the Federal estate tax due by the Hurst Estate, for delivering documents known to be false and fraudulent in material matters, for making false statements and for concealing cash assets, manufacturing evidence with forged signatures and filing a false return.

These indictments have been listed for trial on the March 1957 Trial List.

### 2. *Improper Conduct as Executor*

In the Estate of Winfred S. Hurst, deceased, no. 55113 of the Orphans' Court of Montgomery County, the account of Harry J. Alker, Jr., as executor was called for audit January 4, 1954, before President Judge van Roden of the Orphans' Court of Delaware County, specially presiding. Thereafter the matter

came before the court numerous times, considerable testimony was received and arguments and discussions by and between counsel and the accountant were had. Terms of a settlement with Alker, who was a residuary legatee of the estate, were stipulated and agreed upon, but his failure and refusal to perform all of his requirements thereunder led to the filing by the parties in interest of 18 objections to the account as supplemented. Later 12 of them were withdrawn.

In his adjudication of June 22, 1955, Judge van Roden sustained the remaining six objections to the account and imposed on Mr. Alker surcharges totaling over $130,000. Thereupon the auditing judge said:

"Under all of the circumstances with respect to and involved in the administration of this estate, the court holds that the said Harry J. Alker, Jr. is unfit to represent and protect the interests of the beneficiaries in the settlement of this estate, and this includes the representation of the interests of said beneficiaries before the Treasury Department and/or in the Tax Court of the United States of America."

"Therefore, the said Harry J. Alker, Jr. be and is hereby removed as executor of the will of Winfred S. Hurst, the present decedent and as fiduciary of his estate."

Alker filed exceptions to the adjudication, paid $30,000 of the surcharge and negotiated with the parties in interest a second settlement in writing.

In a supplemental adjudication by Judge van Roden entered December 8, 1955, this settlement was set forth and declared to be fair and satisfactory to all concerned. It provided that Alker turn over to the interested parties assets of the estate including those of several trusts, required him to prepare various documents and to refrain from enforcing objections to the original adjudication. The court, finding that

Mr. Alker had complied fully with the terms of the agreement, sustained the objections in so far as they were consistent with such settlement. The prior adjudication was amended by eliminating the surcharges and distribution was directed.

On February 9, 1956, on petition of the parties in interest in a trust for $50,000, Judge van Roden decreed the acceptance of Mr. Alker's resignation as trustee, such resignation being called for by the settlement agreement.

Thereafter, seven benficiaries of two other trusts for $150,000 filed their petition averring Alker's failure to carry out certain portions of the settlement agreement above referred to. They further averred that his representation of their interests before the Treasury Department and the Tax Court of the United States would greatly prejudice such interests in the settlement or litigation of Federal estate tax liability and that the "procrastinating methods and dilatory handling of the estate by Alker were such as to require his removal as executor." On April 12, 1956, Judge van Roden, acting upon such petition, removed Alker "for the sole purpose of expediting the conclusion of the matters which are still outstanding in this estate." The court added:

"This removal is not made by reason of any dereliction of duty of any sort by the said Harry J. Alker, Jr."

On April 17, 1956, upon petition averring Alker was "neither fit, competent nor qualified to act as trustee" of the trust for Annie E. Hurst, decedent's mother, Judge van Roden removed Alker as trustee of the estate without being discharged as far as his liabilities and responsibilities to the trust were concerned and appointed a substituted trustee.

The court then directed the escrow agents acting under the settlement agreement "for the purpose of

safeguarding the assets during the pendency of these proceedings and the settlement of controverted issues" to deliver such assets to a substituted executor.

On July 13, 1956, Judge van Roden revoked and declared null and void the decree of April 17, 1956, continued Mr. Alker as trustee for the Annie E. Hurst Trust and appointed a corporate fiduciary as cotrustee, all assets of the trust to be delivered to such cotrustee. It directed an account to be filed by Mr. Alker of his administration.

### 3. *Professional Misconduct as Estate Counsel*

At the hearing on the matter now before us there was entered in the record reference to disciplinary action commenced by the Philadelphia Bar Association's committee of censors against Alker.

On May 12, 1956, Emily H. Shekerjian, daughter and heir of Catherine H. Husband, who died October 1, 1949, filed a complaint against Alker for professional misconduct. A subcommittee held hearings on the complaint and answer, on November 5 and 17 and December 1 and 8, 1956, and reported thereon to the committee of censors which approved the report and filed with the prothonotary of the courts of common pleas on January 29, 1957, a formal petition for the disciplining of Alker. This petition took no. 6035 of December Term, 1956, in Court of Common Pleas No. 5. A rule on Alker to show cause why he should not be disciplined for unprofessional conduct was ordered on February 1, 1957. An answer by Alker was filed on or about February 20, 1957.

The petition sets forth that Alker had complainant draw checks on her estate and personal accounts for purposes not known or not understood by his client who for three years attempted without success with the aid of a certified public accountant and other coun-

sel to obtain explanation from Alker for various transactions involving estate funds and complainant's personal funds.

Paragraph 7 of the censors' petition states as follows:

"The testimony and the exhibits adduced at the hearings establish the fact that the respondent is guilty of professional misconduct unbecoming an attorney. and member of the Bar of this Court and in violation of the Canons of Ethics. That he has failed to maintain proper records in his handling of the personal affairs of his client; that he has made unauthorized investments, improperly claimed credits and misappropriated funds; that he has never made proper explanation or an accounting to his client and that he has been contemptuous toward his client, unco-operative and evasive before your petitioner's sub-committee, all of which constitutes conduct requiring discipline by your Honorable Court."

Although this is denied by Alker, the facts set forth in the report of the subcommittee attached to the petition support the averment. This matter is now awaiting hearing.

Also entered in the record is reference to the impounding by the Montgomery County Orphans' Court of the records in the Hurst Estate and the action of the Montgomery County Bar Association's committee of censors in having the orphans' court order impounding the notes of testimony taken at the audit of Alker's accounting in that estate lifted for that committee.

There has not been brought to our attention any evidence as to the purpose of the action of the Montgomery County Bar's board of censors. However, there is sufficient evidence before us on the subject of respondent's conduct as executor of the Hurst Estate and the action thereon taken by the auditing judge to enable this

court to determine whether or not he was justified in removing Alker as executor. The language in the original adjudication of June 1955, indicates lack of confidence in the executor who was found to be "unfit to represent and protect the interests of the beneficiaries" and to represent their interests in tax matters.

That Judge van Roden on April 12, 1956, removed Alker "for the sole purpose of expediting the conclusion of the matters which are still outstanding in this estate" and not "by reason of any dereliction of duty of any sort" does not deter us from giving careful consideration to the circumstances which brought about the conclusions of the judge set forth in the adjudication. Moreover, Judge van Roden's removal of Alker as trustee for decedent's mother's trust on April 17, 1956 (five days later) on representations that Alker "was neither fit, competent nor qualified to act as trustee", was in our opinion not wholly undone by his decree of July 13, 1956, revoking the decree of April 17, 1956, and appointing a corporate trustee to serve with Alker as continuing trustee.

### Discussion

Section 301(6) of the Orphans' Court Act of August 10, 1951, P. L. 1163, gives the court exclusive jurisdiction over the removal of fiduciaries of estates and trusts of which it has jurisdiction.

Section 921 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides that the grounds and procedure for removal of a trustee shall be the same as set forth in the act for removal of a personal representative. Section 331 of the act states such grounds, among others, to be incompetency to discharge the duties of the office for sickness or physical or mental incapacity, and that such incompetency is likely to continue to the injury of the estate.

On the evidence before us, it can not be said that Alker's physical or mental condition at this time is

such as to cause incompetency. His past conduct as fiduciary and as counsel for fiduciaries is another matter.

Section 331(5) provides for discharge of a fiduciary "when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office."

The Restatement of the Law of Trusts §107, in its comment on removal of a trustee states:

"a. Removal by court. A court may remove a trustee if his continuing to act as trustee would be detrimental to the interests of the beneficiary. The matter is one for the exercise of a reasonable discretion by the court."

The same section in its comments on grounds for removal lists, inter alia: ". . . the commission of a crime, particularly one involving dishonesty; unfitness, whether due to old age, habitual drunkenness, want of ability or other cause".

Under the evidence before us respondent has admittedly been convicted of crimes which a Federal Grand Jury and a trial jury have found that he committed. He has been sentenced for such crimes. They involved dishonesty over a period of years by a member of the bar in relationship to his obligations to the Federal Government. Moreover, he has been indicted for committing other crimes involving dishonesty in relation to the administration of an estate and its obligations for the payment of Federal estate taxes.

While respondent has not yet faced trial in the latter indictments, there is enough data in the Hurst Estate record and in the bills of indictment resulting therefrom to justify us in reaching the conclusion that, whether or not respondent is convicted on such indictments, he is not one to whom this court could creditably entrust the management, even with others, of an

368

estate the sole beneficiary whereof has no confidence in such person.

It is not essential that acts complained of shall have been done in the trust where removal is sought: In re Wood's Estate, 41 Pitts. L. J. 222; the test is whether there is jeopardy, not that there are surcharges.

As was said by the late Justice Maxey in Hodgson's Estate, 342 Pa. 250, 267 (1941):

"When a court is called upon to remove a trustee, 'the question in each case is whether the circumstances are such that the continuance of the trustee in office would be detrimental to the trust': Scott on Trusts, sec. 107."

The court there cited Marsden's Estate, 166 Pa. 213 (1895), where it had held that the power of the court to remove a trustee "is not dependent upon the misconduct of the trustee sought to be superseded; and it is enough to show that his retention, by reason of the existence of hostile relations between him and cestui que trust, would naturally work disadvantage, inconvenience or great discomfort to the latter."

In Hodgson's Estate, supra, the trustee was removed.

In Corr Estate, 358 Pa. 591, 598 (1948), the court sustained the action of our court in removing a testamentary trustee. In its opinion the Supreme Court, at page 598, cited Hodgson's Estate, supra, where it quoted its opinion in Price's Estate, 209 Pa. 210, 212 (1904):

"'"While inharmonious relations between trustee and cestui que trust, not altogether the fault of the former, will not generally be considered a sufficient cause for removal, yet where they have reached so acrimonious a condition as to make any personal intercourse impossible and to hinder the proper transaction of business between the parties, a due regard for the

interests of the estate and the rights of the cestui que trust may require a change of trustee." ' "

In Friese's Estate, 317 Pa. 86, 90 (1934), Justice Kephart recited that disqualifications of an estate administrator included conviction of crime and unfriendly feeling between the parties. He cited the case of Jacob Altemus, 1 Ashmead 49 (1823), wherein the court, although no evidence was introduced that there had been conviction of a crime, said that: "A conviction of felony, or other crime, may perhaps, in general, be a good reason for refusing letters of administration to a person otherwise entitled."

In Commonwealth, to use, v. Allen, 254 Pa. 474 (1916), the Orphans' Court of Susquehanna County removed a trustee it had appointed to sell real estate on petition, setting forth that he had absconded with the proceeds. The Supreme Court in its opinion in an action against the trustee's surety said, page 477, that the court below "made an order of removal as prayed for on 'the presentation of the foregoing petition and affidavit and other evidence brought to the attention of the court' ".

### Conclusion of Law

There is far too much evidence of dilatory, careless and questionable conduct on the part of Alker in handling estates, as fiduciary or as counsel, in the record before this court to accept past performance in either capacity as any warranty that as a cotrustee in the Rentschler Estate he would serve with satisfaction to the life tenant, to the cotrustees or the court which has jurisdiction over the estate.

A trustee must be one who is trusted. Lack of diligence in performance of duty, absence of candor in dealing with parties having an interest in an estate, refusal to keep them informed as to the status thereof, failure to handle assets of the estate with complete de-

votion to its welfare, inability to act at all times with sincerity and conscientious devotion to the office, these are traits which inevitably create loss of confidence of those for whom one is acting in a fiduciary capacity.

A trustee must merit and enjoy confidence. Mere ability to accept office, to keep records, to make investments and to state accounts is not enough. He must lean over backward to assure faithful service to those whose interests have been entrusted to him, whatever the consequences to himself, financially or otherwise.

While there is a distinction between cases involving a court-appointed trustee and those involving the removal of a testamentary trustee, there can be no question that the orphans' court may in any case properly remove one in whom the life tenant of the trust has lost all confidence because of past experience, whether or not testator named him as trustee. That respondent possessed the father's confidence does not mean the daughter must continue with a trustee she does not trust; certainly when there is in the record evidence of conviction of crime and of charges by estate beneficiaries of unprofessional conduct resulting in proceedings for disciplinary action against such trustee.

To enjoy the confidence of the court itself, a trustee must possess an unblemished record of faithful, honorable and satisfactory service as such. Particularly should a member of the bar serving in the office of trustee be above reproach. As an officer of the court, he must set for himself and maintain the very highest standards of conduct. He must act at all times with integrity and in accordance with the canons of profesional ethics that all members of the bar are expected to observe, especially those who have been members for as long as 40 years.

Criminal charges against respondent which have resulted in his conviction, the pendency of additional

criminal charges and of the two proceedings for disciplinary action against respondent as an attorney and the circumstances of the case require such action by this court as will assure the protection of the trust property involved and the termination of the hostile relationship existing between respondent and the life tenant. This calls for the removal of respondent as cotrustee.

The foregoing conclusion also requires the removal of Alker as a coexecutor. While an account of the executors has been filed, the administration of decedent's estate has not been concluded. Alker disagrees with his coexecutors on questions of administration of decedent's estate and has filed his own separate statement of proposed distribution instead of joining in that filed by the coexecutors. After the filing of the adjudication on the account of the executors further action by the executors is necessary for the distribution of the estate and the filing of a schedule of distribution if one be required. Moreover, there is always the possibility that additional assets may be received by decedent's estate at a future date. As executors are not ordinarily discharged, Alker and the other coexecutors would then be entitled to receive, administer and account for such additional assets.

For these reasons, it is our opinion that Harry J. Alker, Jr., should be removed as coexecutor and cotrustee of the Estate of George W. Rentschler, deceased.

Accordingly, we enter the following

### Decree

And now, March 7, 1957, after hearing on petition and answer, Harry J. Alker, Jr., is removed as a coexecutor and cotrustee under the will of George W. Rentschler, deceased, and the said Harry J. Alker, Jr., is directed to transfer and surrender forthwith to Wilhelmina L. Rentschler and Tradesmens Bank and

Trust Company, the remaining executors and trustees, any assets of the Estate of George W. Rentschler, deceased, now in his possession or under his control.

*Lewis M. Stevens* and *George Chimples*, for exceptant.

*Edmonds, Obermayer & Rebmann*, contra.

BOLGER, J., May 10, 1957.—We have carefully reviewed the decree and the supporting opinion of the hearing judge and the entire record. We find ourselves in complete accord with the decree as entered. Two convictions by a Federal jury* plus the cumulative evidence of misconduct in other estates and his deviousness in the administration of his duties in this estate, which justify the loss of confidence in him by the sole life tenant, constitute such a record of improper conduct that we have no hesitation in sustaining the action of the hearing judge. The latter's clear and correct exposition of the facts and of the law applicable to the responsibility of trustees and of the right of the life tenant and of this court, sua sponte, to have him removed requires very little comment now.

We cannot accept the characterization in respondent's attorney's brief of the Federal income tax evasion conviction as rising no higher in this State than misdemeanor. It involves deception. In the case wherein he was convicted on April 8, 1957, subsequent to the entry of the decree of the learned hearing judge, but before argument on exceptions, the record of respondent's conduct as executor in the Estate of Winfred S. Hurst, tried by President Judge van Roden in the Orphans' Court of Montgomery County, goes to the

---

* The date of the second conviction is April 8, 1957, upon three counts of an indictment charging respondent with attempting to defeat the United States of $35,000 of Federal estate tax in the estate of Winifred S. Hurst. This verdict was characterized by the trial judge as "amply justified by the evidence".

very heart of the nature of a fiduciary's responsibility. The offenses involved are particularly improper for a person who is serving as a fiduciary. They are mala in se, conceived and carried out with questionable motives, and strongly indicate that the interests of this estate are likely to be jeopardized if respondent is permitted to continue in his fiduciary capacity.

Motions for new trial and for judgment in defendant's favor are pending in the Federal courts. That does not mean that we must ignore the full implications of the verdicts of guilty. In those cases the character of the trials, of the issues which involve the burden of proof and the presumption of innocence are not applicable here. The suggestion that those proceedings are legally inconclusive does not eliminate from our consideration the facts in those cases. The entire situation insofar as we are concerned involves more than suspicion, conjecture and smoke and we are entirely satisfied that the findings of fact by the hearing judge are clearly supported. The time for us to act is now, while the assets of this estate are in this respondent's possession (even though in a qualified degree). He has all of the manifold possibilities at the command of a cofiduciary to substantially influence administration of the trust and to qualifiedly represent it in its dealings with others. We are not required to wait to bolt the stable door until the horse is gone. It would be fatuous for us to attempt to create at this time all of the necessary safeguards to protect this estate from the evils which the uncertain future might present.

We would be derelict in our duty if we refused the relief requested by the life tenant.

The exceptions are dismissed and the decree of the hearing judge is affirmed.